# Thomas *versus* Snyder.

### Bills of Lading.—Stipulation as to Payment of Freight.

1. A shipper consigned coal to D. or his assigns, "he or they paying the freight for the said coal," directing in the bill of lading, at the request of Thomas, the owner of the vessel in which the coal was shipped, "freight payable to P. D. Thomas." When the coal was delivered to the assigns of D., who were at the time able and willing to pay the freight, neither Thomas, his agent, nor any one for him, was present to receive it, and by the subsequent failure of the assignees it was lost. In an action by Thomas against the shipper of the cargo, to recover the freight, it was *held*, that it was not error in the court to instruct the jury that if they found these facts their verdict should be for the defendant.

2. It is not an unreasonable rule of law, that a party who insists upon a stipulation in a bill of lading, that the freight shall be payable to him, should be present personally or by an agent, to receive it at the proper time and place for payment.

ERROR to the District Court of *Philadelphia*.

This was an action of *assumpsit*, brought by Philip D. Thomas against George W. Snyder.

The declaration was on a bill of lading for the freight by the owner of the vessel against the shipper of the cargo.

It averred a delivery of certain coal (180 tons) by defendant, on board plaintiff's canal-boat, the Gerhard, at Pottsville, to be carried to New York, and there delivered to William D. Duncan or assigns, he or they paying freight at the rate of $1.90 cents per ton, amounting to $342; "which said freight it was then and there agreed should be paid to Philip D. Thomas."

[Thomas *v.* Snyder.]

It then averred a promise to pay the freight in consideration of the undertaking to carry, and the carriage and delivery to the assigns of Duncan, viz.: Bagley & Brothers—the consequent liability of the defendant, and the breach.

The second count was for work and labour.

The pleas were *non assumpsit* and payment with leave.

On the trial, the plaintiff gave in evidence the following bill of lading:—

"Port Carbon, August 29th 1857.

"Shipped in good order and condition by George W. Snyder, on board the good boat called Gerhard, of Philadelphia, whereof the undersigned is master, and bound for New York, to be delivered in like good order and condition, at the aforesaid port of New York (the dangers of the seas excepted), unto David Duncan, or to his assigns, he or they paying freight for the said coal at the rate of one dollar and ninety cents per ton. Freight payable to P. D. Thomas.

Tons.
　Lump Coal.
100 Broken　"
　80 Egg　　"
　　Stove　　"
　　Chestnut "
———
180 tons of 2240 lbs.
White Ash Coal.

"In witness whereof, the master of the said boat hath affirmed to three bills of lading, one of which being accomplished, the others to stand void.

"DANIEL BAKER."

And then called a witness, who proved that Duncan was the agent of Snyder the shipper, to sell the coal; Snyder owned it. Thomas was resident in Philadelphia. There was no notice given who got this coal, until the boat returned from New York, after delivering her cargo. Witness went on to get the freight, and called on Duncan the consignee for it, who stated he had sold the coal to Bagley & Brothers, and that if he were to demand the freight, they would ask to put in the note at four months, which was to be given for the price of the coal. Pursuant to this request, the witness called on Bagley & Brothers, and was promised the money, and an hour appointed to receive it. He waited at the time and place appointed for an hour, and was then told that, as the freight was made payable to Thomas, they would not pay him.

The defendant then read in evidence the testimony of Bagley, taken under a commission, and called a witness, who testified that he was Snyder's clerk; after the boat had been engaged, and was partly loaded, Miller, who was agent of the plaintiff, and who had procured the freighting for the plaintiff, directed him to insert in the bills of lading the clause "freight payable to P. D. Thomas," which he did before the boat left. Mr. Snyder was not present, but afterwards received the two bills; wit-

ness kept one and sent one to Duncan—there were three. He then called David Duncan, who stated that he was a mere agent of Snyder's, and the cargo was consigned to him for sale. He sold to Bagley & Brothers in New York, at $4.50 per ton, payable in a note at four months, less the freight, which was payable and to be paid by Bagley & Brothers, in cash.

He also stated that in his conversation with plaintiff's witness, he did not refer to this freight in particular, but to the practice of collecting freights in general, and that all he did or promised to do about that, was a mere act of kindness.

He admitted that he did not see the plaintiff for two months after the sale of the coal, nor his agent for two weeks after the sale; and that neither of them had been notified by him of the fact of sale, or requested to retain the coal until the freight was paid, and that when he sold the coal he knew the clause was in the bill of lading, which prohibited the receipt of the freight by the captain.

The plaintiff requested the court to instruct the jury that there was nothing shown which discharged the defendant from his liability in the bill of lading to pay the freight, as stipulated therein. The court (STROUD, J.) charged the jury as follows :—

"If you find, from the evidence, that at the special direction of the plaintiff the provision in the bill of lading that the freight should be payable to him by the consignee or his assigns, was inserted—that notwithstanding this provision, he made no effort to have the freight paid to him; that he did not go on to New York to receive payment, nor appoint an agent to receive it for him, nor give authority in writing, or otherwise, to receive the freight for him. And if you find that Bagley & Brothers, who bought the coal, were able to pay the freight in· cash contemporaneously with the delivery of the coal to them, and would have so paid it, if the plaintiff had been there to receive it, or had appointed an agent to do so; that Bagley & Brothers failed, and became unable to pay, and in consequence thereof the freight has been lost, your verdict may be for the defendant."

There was a verdict and judgment in favour of defendant; whereupon the plaintiff sued out this writ, and assigned for error here the following matters, viz. :—

1. The learned judge erred in refusing to instruct the jury as requested by the plaintiff below.

2. The learned judge erred in instructing the jury as above stated.

*R. C. McMurtrie,* for plaintiff, argued: The rule is settled that the consignor, being owner of the goods, is the person primarily liable for the freight. The work is done for him at his request, and from these facts arises the promise to pay. The stipulation in the bill of lading, for payment by the consignee,

[Thomas *v.* Snyder.]

is an additional security for the benefit of the shipowner, and not for that of the shipper, and the shipowner may always waive that, and look to the shipper, being owner of the cargo on his original undertaking.

The plaintiff's position was stronger than under ordinary circumstances—inasmuch as there was an express stipulation that the shipowner, and not the captain, had the right to receive the freight. For, by this the shipper knew that the ordinary agent to receive freight (the captain) would not be on the spot at the arrival of the cargo, and as the shipper retained the right to require delivery to a person then as yet unknown, and at an uncertain point in the port of New York, if he desired the shipowner to insist on his lien, and demand pre-payment of the freight, it was his duty to advise him of that desire, and caution him not to waive it.

The captain, not having the right to receive the freight, could not have exercised an option not to deliver until payment, and the defendant's agent expressly proved that no agent of the plaintiff, entitled to receive the freight, was notified either not to deliver until payment, nor when delivery was to be made.

The evidence did not warrant the jury finding for the defendant, even if all the facts were found as required by the judge in his instruction; for they were either immaterial, or required other facts to be proved, which were not proved, to warrant such a verdict; such as that the owner of the vessel was informed by the shipper of the goods that he, the owner, must insist on the payment of the freight before delivery, or appoint an agent to receive the same at the time of the delivery of the cargo, and without these facts, of which there was no allegation or evidence, the facts submitted as sufficient to authorize a verdict did not suffice for that purpose, either independently or in connection with the rest of the proof, or the undisputed facts in the cause.

If the law be, that if the shipowner's agent, entitled to receive the freight, is on the spot at the time of delivery, and does not insist on his lien, but permits delivery to be made without payment of freight, or for any cause does not receive it, and the consignor under those circumstances remains liable, *a fortiori* must this be so, when there is no agent authorized to receive, and the contract excludes the usual agency, and the circumstances show that the shipowner could not know where to have an agent; and the consignor knew all these facts, and did not request that an agent might be sent, or that the delivery should not be made until payment: Penrose *v.* Wilkes, stated in Abbott 415; also in 13 East 570; Tapley *v.* Martens, 8 T. R. 451; Sheppard *v.* De Bernales, 13 East 565; Griswold *v.* New York Ins. Co., 3 Johns. 328–9; Marsh *v.* Pedder, 4 Camp. 257; Do-

[Thomas *v.* Snyder.]

mett *v.* Beekford, 5 B. & Ad. 521; Layng *v.* Stewart, 1 W. & S. 222; Collins *v.* Thellrion, 10 Watts 384; Waub *v.* Wood, 1 Zabriskie 292; Kent, 3 Com. 222; Parsons' Mer. Law 352; Holt *v.* Westcott, 43 Maine 445.

*George M. Wharton,* for defendant.—The question of fact left to the jury, and which they found in favour of the defendant, was, whether the money, which the assignees of the bill of lading in New York had in hand to pay, on the delivery of the cargo, had been lost by the negligence of the plaintiff. It being established by the verdict that the money was so lost by the plaintiff's negligence; the question of law is, whether, notwithstanding this fact, the plaintiff can compel the defendant, the shipper, to reimburse to the former the amount of the loss.

There is no doubt that the plaintiff's boat carried the defendant's coal at the instance of the latter—but the coal was so carried under an express stipulation, inserted at the plaintiff's instance, which changed in a material point the ordinary terms of the bill of lading by inserting another, viz. : That the freight was to be paid to the plaintiff himself; but still the contract stood, that the freight was to be paid *upon the delivery of the cargo.* The duty was, therefore, imposed upon the carriers' agent, the captain, not to deliver the coal until the owner of the boat, the plaintiff, or some authorized agent of his was present to receive the freight. This duty was neglected by the captain, the plaintiff's agent, who delivered the coal to the assignees of the bill of lading. They were ready to pay the freight, but could not do so, as neither the owner nor his representative was present to receive it. The defendant was no party to this arrangement, nor did he participate in or connive at this neglect of duty; and he ought not in justice to suffer from it.

The case is unlike any of the authorities cited. In none of them did the owner make the freight payable to himself. The provision introduced by the plaintiff was binding upon his own agent—and the defendant had the right to presume that the stipulation would be fulfilled—and that the plaintiff would get his freight himself from the consignee or his assigns. He had a right to assume that the captain would retain the cargo until the owner was on the spot to receive the freight, or until he received advices from him. Freight is not payable until the service, that is, the carriage, is performed; and, therefore, the defendant was under no obligation to pay it until the plaintiff had brought the cargo to New York, and was ready to deliver it there.

Authority is not needed to show that a man must be responsible for his own negligence; and that a creditor having collaterals, if he lose them through his own default, must credit his debtor with their value.

3 Wr.—21

[Thomas *v.* Snyder.]

The opinion of the court was delivered, May 8th 1861, by

WOODWARD, J.—The customary clause in bills of lading directing the payment of freight by the consignee or his assigns is, according to the authorities, both English and American, a condition precedent, intended only for the benefit of the carrier, and if he deliver goods without receiving freight, he may recover it of the consignor if he were owner of the goods or a shipper under a charter-party. But the bill of lading in this case has more than that customary clause. The consignment was to David Duncan, New York, or to his assigns, "he or they paying freight for the said coal at the rate of one dollar and ninety cents per ton;" to which was added, "freight payable to P. D. Thomas." These last are very unusual words in bills of lading. They were inserted by the plaintiff's particular direction, and, taken in connection with the customary clause as above quoted, they were meant, undoubtedly, to prevent the payment of freight to the master of the canal-boat, and to secure it to himself as the owner of the boat.

Nor does a single one of the numerous cases cited by the learned counsel of plaintiff in error exhibit a bill of lading with this remarkable feature on its face. Most of them put the shipper's liability for freight after the cargo has been delivered to the consignee, in disregard of the clause " he or they paying," &c., upon the covenants in the charter-party, and amount to no more than this—that the master does not lose his right of recourse upon such covenants by failing to get his freight, as directed by the bill of lading, from the consignee. And Lord Tenterden seemed to think, in Drew *v.* Bird, 1 Moody & Mal. R. 156, that where there was no charter-party, there was no such right of recourse, and that the carrier must collect his freight out of the consignee, or lose it. But in Baker *v.* Havens, 19 Johns. 234, and our own cases of Collins *v.* Transp. Co., 10 Watts 386, and Layng *v.* Stewart, 1 W. & S. 222, there was no charter-party, and the general doctrine was applied that the consignor or owner is liable for freight, notwithstanding the failure of the carrier to enforce his lien under the customary clause of the bill of lading. But this is the full extent of the cases. They do not decide the effect of a clause inserted by the owner of the vessel, which forbids the consignee to pay freight to the master, and directs it to be paid to himself. They do not, therefore, rule the case in hand.

The learned judge refused to charge that there was nothing shown to discharge the defendant, who was the owner and shipper of the cargo, from liability for freight, but instructed them, "if you find from the evidence, that, at the special direction of the plaintiff, the provision in the bill of lading that the freight should be payable to him by the consignee or his assigns, was

inserted—that notwithstanding this provision, he made no effort to have the freight paid to him—that he did not go on to New York to receive payment, nor appoint an agent to receive it for him, nor give authority in writing or otherwise, to receive the freight for him—that if Bagley & Brothers, who bought the coal, were able to pay the freight in cash contemporaneously with the delivery of the coal to them, and would have paid it if the plaintiff had been there to receive it, or had appointed an agent to do so; and that if Bagley & Brothers failed, and became unable to pay, and in consequence thereof the freight has been lost, your verdict may be for the defendant."

Now, we think the question was well submitted to the jury on this summary of the facts. Through the failure of Bagley & Brothers, who were the "assigns" of Duncan, the consignee, the freight is lost. Which of two innocent parties shall bear the loss—the owner of the coal, who was liable at law for freight, notwithstanding the customary clause in the bill of lading; or the owner of the vessel, who employed a master he would not trust, and then neglected to be at hand at the proper time to receive the freight himself? Is it not apparent that this neglect of the plaintiff was the cause of the loss? The rule is, that where a loss must fall upon one of two innocent parties, he shall bear it whose conduct caused it. We give the plaintiff all he can claim, perhaps more than should be conceded, if we treat him as an innocent party. He allowed his boat to be freighted for the New York market—he knew the coal was sent there to be delivered to a purchaser—the bill of lading appointed the consignee or his assignee to pay the freight—the assignee stood ready to pay it and would have paid it to the master, but for the plaintiff's written order to pay it only to himself—the lien was lost and the freight unpaid, simply because the plaintiff was not there by himself or agent to receive it. In all this, if there was fault at all, it was his fault. But if we say there was no fault on his part, as certainly there was none on Snyder's, and that they stand equally innocent, it was treating the plaintiff with the utmost fairness to submit these circumstances to the jury, leaving them to decide which party should bear the loss. This is what the court did. The plaintiff has no reason to complain of it.

That a party who insists on such a stipulation in a bill of lading should be at hand, or should appoint some one to receive the freight at the proper time and place for its payment, is not, we think, an unreasonable rule of law. It does not clash in the least with the authorities cited, and it is recommended by that sound rule of diligence in business which is good for everybody. The court gave this rule to the jury in connection with evidence which made its application necessary and proper.

The judgment is affirmed.