# Pennsylvania Railroad Company *v.* Whitney & Kemmerer, Appellants.

*Railroads—Carriers—Liability for freight charges—Consignors and consignee—Interstate commerce—Affidavit of defense.*

A shipper who calls upon a public carrier to perform his duty and transport goods to a consignee by him designated, is primarily liable for the lawful charges resulting from the transportation.

The carrier has no right to designate the consignee, nor has he any right to refuse to accept the goods, until he has had an opportunity to inquire whether the consignee will receive them. Even where there is a clause in the bill of lading, providing that

the goods are to be delivered to the consignee, upon the presentation of the receipt and payment of the freight, if the carrier delivered the goods without collecting the freight, the consignor still remains liable to the carrier for his lawful charges.

The fact that the consignee may also become liable does not cancel the primary obligation of the shipper.

In an action by a railroad company to recover demurrage charges on an interstate commerce shipment, where the statement sets forth that it received for shipment certain cars of coal from the consignor, which the consignee refused to accept, the consignor is liable for the demurrage charges, and an affidavit of defense is insufficient, which admits that the cars were shipped at the order of the defendants and does not specifically deny that they were the shippers of the coal.

The fact that the coal was shipped by another company at the order of the defendants did not constitute a defense, in that the affidavit admitted that the defendants had ordered the coal company to make the shipment, which would confer upon that company authority to name the defendants as consignors. Even if the coal company had made the shipment in its own name, it was the agent of the defendants, and the latter were undisclosed consignors, and consequently liable for the demurrage which accrued when the consignee refused to accept the shipment.

*Interstate Commerce Act—Rates of carriers—Demurrage—Right to collect.*

Under the Interstate Commerce Act the rates to be collected by a carrier are matters of positive law and shippers, carriers and consignees alike are charged with knowledge of them. Where under such act the charge for demurrage becomes a charge incidental to transportation it is the duty of the carrier to exact it from all shippers without discrimination.

Argued October 17, 1919. Appeal, No. 211, Oct. T., 1919, by defendants, from judgment of C. P. No. 5, Phila. County, December Term, 1915, No. 174, for want of sufficient affidavit of defense in the case of Pennsylvania Railroad Company v. Mahlon S. Kemmerer, Daniel Whitney, Charles H. Jacobs and Daniel F. Connor, copartners, trading as Whitney & Kemmerer. Before ORLADY, P. J., PORTER, HENDERSON, HEAD and TREXLER, JJ. Affirmed.

Assignment of Error—Opinion of the Court. [73 Pa. Superior Ct.

Assumpsit for charges of demurrage.

Rule for judgment for want of a sufficient affidavit of defense.

The opinion of the Superior Court states the case.

The court made absolute the rule. Defendants appealed.

*Error assigned* was the order of the court.

*H. B. Gill,* for appellant.—The consignor could not be held liable for demurrage charges: Missouri-Pacific Ry. Co. v. Union Stockyard Co., 204 Fed. Rep. 757; 10th Corpus Juris, p. 469, Sec. 742; Wallingford Bros. v. Bush, 255 Fed. Rep. 949; Hocking v. Hamilton, 158 Pa. 107; Phila., etc., R. R. Co. v. Wireman, 88 Pa. 264.

*Charles Myers,* and with him *Sharswood Brinton,* for appellee.—The consignor was liable for both freight charges and demurrage: Collins & Timberlake v. Union Transportation Co., 10 Watts 384; West Jersey & Seashore Railroad Company v. Whiting Lumber Co., 71 Pa. Superior Ct. 161; C., C., C. & St. L. Ry. Co. v. Dettlebach, 239 U. S. 588; B. & O. Railroad Co. v. Luella Coal Co., 74 West Virginia 290; P. R. R. Co. v. Descalzi, 59 Pa. Superior Ct. 614; P. & R. Ry. Co. v. Baer, 56 Pa. Superior Ct. 307.

OPINION BY PORTER, J., February 28, 1920:

This is an appeal by the defendants from an order of the learned court below making absolute a rule for judgment for want of a sufficient affidavit of defense.

The plaintiff is a common carrier engaged in the transportation of goods for hire, and the defendants were at the time of the transactions here involved engaged in the business of buying and selling coal. The statement filed by the plaintiff averred that the defendants, during the months of March, April and May, 1909, shipped several cars of coal from Kingston, Pennsylvania, to be delivered by the plaintiff to Bates & Company, the con-

signee, at Newark, New Jersey, among said cars being car P. R. R. 288553, which was shipped from Kingston on April 25, 1909, and was placed for delivery to Bates & Company, the consignee, at Newark, N. J., on May 6, 1909, and Bates & Company were notified of its arrival on the same date. Bates & Company refused to unload this and several other cars, which had been consigned by the defendants to them, and the plaintiff, on July 6, 1909, notified the defendants of such refusal by Bates & Company and requested the defendants to furnish disposal orders for said cars of coal which then remained unloaded at Newark, N. J., awaiting disposal orders. In response to the request of plaintiff for disposal orders for said cars the defendants wrote to the plaintiff, on July 6, 1909, a letter of which the following are the material parts:

"We beg to state that our records show that we shipped these cars consigned to Bates & Co. in March, April and May. We would like very much to help you out, but unfortunately this coal was sold to Bates & Co. f. o. b. cars at mines and we cannot do anything to assist you in moving these cars. Should Bates & Co. refuse the cars at this date, we will still be compelled to refuse to move the cars, for we gave them every opportunity to refuse the coal, which they did not do,

"Yours very truly,

"WHITNEY & KEMMERER."

On the following day, July 7th, Bates & Co. informed plaintiff's agent at Newark, N. J., that they did not at that time refuse the several cars, including the car in question, held for delivery to them at that point, which had been shipped by defendants, and that they intended to accept such cars and pay the charges on them as fast as possible. During July, August, September, October and November, 1909, Bates & Co. unloaded and paid the freight and other charges on all of said cars of coal consigned to them by the defendants, except the car in question. On November 20, 1909, Bates & Co. gave to the

plaintiff a written notice that they refused to accept the car in question. The plaintiff subsequently sold the car of coal for the best price obtainable and credited the amount realized from the sale upon account of its claim for freight and demurrage due upon that particular car of coal and subsequently brought this action to recover the balance alleged to be due from the defendants, as the consignors of the shipment.

The affidavit of defense admitted that the car of coal had been shipped to Bates & Co., but averred that the defendants had contracted to sell to Bates & Co. certain carloads of coal to be delivered free on board cars at mines; that defendants, not then owning the coal, placed an order with the Kingston Coal Co. to so ship and deliver the cars of coal sold by the defendants to Bates & Co., charging the price thereof to these defendants, and said car was so shipped; that defendants have no copies of the bill of lading issued upon said shipment and therefore, while as matter of fact the car was shipped on the order and for the account of the defendants, yet they are unable to say whether as between the plaintiff and these defendants they were the shippers of said coal so as to raise an implied contract as between them and the plaintiff to pay the freight or charges thereon. This cannot be held to be a sufficient denial of the explicit averment of the statement that the defendants were the shippers of the coal. The most that can be said for this allegation of the affidavit of defense is that the defendants did not know whether they had been in the bill of lading named as the consignors. It admits that the defendants had ordered the coal company to make the shipment, which would confer upon that company authority to name the defendant as consignors. Even if the coal company had made the shipment in its own name, it was the agent of the defendants and the latter were undisclosed consignors. The defendants must be held to whatever liability attached to the shippers of the coal.

The affidavit further averred that under the rules, regulations and practices of the plaintiff it is the duty of the plaintiff to collect from all consignees the freight due upon shipments of coal and other goods consigned to them at what are termed "collect points"; that the plaintiff established a credit list among which it placed the names of those consignees to whom it gave credit for the payment of freight upon shipments delivered to them; that Newark, N. J., was one of said "collect points"; that Bates & Co. were upon the credit list of the plaintiff at said point, and that the delivery of said cars to said Bates & Co. without requiring the payment of the freight thereon was an election on the part of said plaintiff to look to said Bates & Co. for the payment of said freight. With regard to this allegation of a defense it may be observed that the statement of the plaintiff does not allege that the coal was delivered to Bates & Co., the car was placed for delivery and Bates & Co. were notified but they refused to unload it; the defendants were notified of that fact and refused to have anything to do with the car; Bates & Co. subsequently notified plaintiff that they would as soon as possible accept the cars and pay the charges, but they finally refused to accept this particular car and the plaintiff sold the coal and applied the proceeds in part payment of the charges. The shipper who calls upon a public carrier to perform his duty and transport goods to a consignee by him designated is primarily liable for the lawful charges resulting from the transportation. The carrier has no right to designate the consignee, nor has he any right to refuse to accept the goods until he has had an opportunity to inquire whether the consignee will receive them. Even where there is a clause in the bill of lading providing that the goods are to be delivered to the consignee upon presentation of the receipt and payment of freight, if the carrier delivers the goods without collecting the freight, the consignor still remains liable to the carrier for his lawful charges: Collins v. Union Transpor-

tation Co., 10 Watts 384; Layng v. Stewart, 1st W. & S. 222; Thomas v. Snyder, 39 Pa. 317; Wells Fargo & Co. v. Cuneo, 241 Federal 727. The consignee may also become liable if he takes possession of the goods, or has ordered the shipment or assumed to control it; Penna. R. R. Co. v. Descalzi, 59 Pa. Superior Ct. 614; Philadelphia & Reading Ry. Co. v. Baer, 56 Pa. Superior Ct. 307; W. J. & Seashore R. R. Co. v. Whiting L. Co., 71 Pa. Superior Ct. 161. The fact, however, that the consignee may also become liable does not cancel the primary obligation of the shipper. In Collins v. Union Transportation Co., supra, the consignees had actually received the goods and the carrier had brought an action against them to recover the amount of the freight, yet it was permitted to recover from the shipper. The allegations of the affidavit of defense were not a sufficient answer to the claim of the plaintiff for the amount of the freight charges.

The appellants contend, however, that even if liable for the freight they cannot be held liable for the amount of the charges for demurrage, as such a charge implies inattention, negligence, or a retention for personal use, upon the part of the consignee. The shipment in this case involved interstate commerce and is controlled by the provisions of the legislation by Congress upon that subject. The Hepburn Act (34 Statute 584, c. 3591), enlarged the definition of the term "transportation," so as to include "All services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration, or icing, storage, and hauling of property transported; and it shall be the duty of every carrier subject to the provisions of this act to provide and furnish such transportation upon reasonable request therefor, and to establish through routes and just and reasonable rates applicable thereto." The effect of this legislation was commented upon in C., C., C. & St. L. Ry. Co. v. Dettlebach, 239 U. S. 588: "From this and other provisions of the Hepburn Act it is evident that Congress

recognized that the duty of carriers to the public included the performance of a variety of services that, according to the theory of the common law, were separable from the carrier's service as carrier, and, in order to prevent overcharges and discriminations from being made under the pretext of performing such additional services, it enacted that so far as interstate carriers by rail were concerned the entire body of such services should be included together under the single term 'transportation' and subjected to the provisions of the act respecting reasonable rates and the like." The affidavit of defense does not deny that the charges for freight and demurrage which the plaintiff seeks to recover were assessed in accordance with the tariffs duly published and filed by the plaintiff with the Interstate Commerce Commission, as required by the acts of Congress. Such charges do not result from any private contract between the carrier and either the shipper or the consignee. They are not the subject of private contract. When the schedule of tariffs is duly filed and published the rates become matters of positive law, and shippers, carriers and consignees alike are charged with knowledge of them. The carrier is bound to collect, and the shipper or consignee is bound to pay, the correct charges as set forth in the published tariffs: Phila. & Reading Ry. Co. v. Baer, supra; W. J. & Seashore R. R. Co. v. Whiting L. Co., supra. Under the act of Congress the charge for demurrage becomes a charge incidental to the transportation of the property and it is the duty of the carrier to exact it from all shippers without discrimination. When the defendants shipped the car in question they are presumed to have known that the tariffs filed with the Interstate Commerce Commission would require the carrier to collect a demurrage charge of $1 per day, excluding Sundays and legal holidays, for each day the car was held by plaintiff at its destination and not unloaded by the consignee within forty-eight hours after the placement of said car for delivery. The law was

notice to the shipper that the charge would be made upon the shipment and the carrier was not required to give notice that it would comply with the duty by the law imposed: Balto. & Ohio R. R. Co. v. Samuel, 48 Pa. Superior Ct. 274.

The allegation of the affidavit of defense that the plaintiff failed to give the defendants notice of the sale of the coal, on December 20, 1909, as required by the law of New Jersey, cannot avail to prevent the entry of judgment in this case. The defendants, by their letter of July 6, 1909, notified the plaintiff that they would have nothing further to do with the coal, and in their affidavit of defense disclaim ownership of the coal. It may be assumed that if the coal had been sold at a higher price than that obtained by the plaintiff, the defendants would have been thereby benefited, for the proceeds of the sale were to be credited upon the claim for freight and demurrage. But we cannot assume that notice to the defendants would have resulted in the sale of the coal at a higher price. There is no allegation in the affidavit of defense that the coal was not sold for the best price obtainable. If a better price ought to have been obtained, then the defendants should have stated in their affidavit of defense what would have been a fair price for the coal.

The judgment is affirmed.