## Director General of Railroads v. S. F. Scattergood & Co.

*Railroads—Federal control—Statute of limitations as against claims of railroads arising during Federal control.*

1. Claims of railroads arising during Federal control remained the property of the Government after March 1, 1920, and, hence, the statute of limitations has no application to such claims, as the statute does not run against the Government; the limitation of three years in the Transportation Act of 1920 is not retroactive and does not affect the Director General.

*Railroads—Liability of consignees for freight on interstate shipments— Direction to railroad to collect freight from customer before delivering goods.*

2. The consignees in an order bill of lading on an interstate shipment are *prima facie* the owners of the goods, and, hence, they cannot relieve themselves from liability for the freight by instructing the railroad to deliver the goods to a purchaser from them upon the payment of freight, and, if the railroad delivers the goods without collecting the freight, their liability remains.

Rule for judgment for want of a sufficient affidavit of defence. C. P. No. 1, Phila. Co., June T., 1925, No. 8913.

*Barnes, Biddle & Morris,* for plaintiff; *R. Martin Boyd,* for defendants.

TAULANE, J., Nov. 24, 1925.—This is a rule for judgment for want of a sufficient affidavit of defence. The cause of action arose while the railroads were under Federal control.

On Dec. 18, 1918, the Royal Milling Company delivered to the Great Northern Railway at Great Falls, Montana, a carload of feed for shipment to the defendants at Middlesex, Pennsylvania, *via* the Pennsylvania Railroad.

The bill of lading issued by the Great Northern Railway to the order of the defendants was endorsed and delivered by the defendants to G. H. Glatfelter, When the feed arrived at Middlesex on Feb. 1, 1919, the defendants instructed the Pennsylvania Railroad to deliver it to Glatfelter upon the surrender of the bill of lading and the payment of the freight. The railroad, in violation of the defendants' instructions, made delivery without the payment of the freight.

This action is to collect the freight from the defendants, who deny liability on two grounds, viz.: *(a)* That the claim is barred by the statute of limitations, because Federal control ceased at the time of the signing of the Armistice, and *(b)* that the railroad's failure to collect the freight from Glatfelter relieved the defendants.

There is no merit in the contention that Federal control ceased upon the signing of the Armistice. While Federal control was purely a war measure, it is too clear for serious argument that the railroads could not be returned to private control without congressional legislation, as otherwise the rights of the railroads, the Government and those dealing with the railroads would have been in utter confusion, and the transportation of the county paralyzed.

The railroads remained under Federal control until March 1, 1920 (Transportation Act of 1920, ch. 91, 41 Stat. at L. 469), and claims arising during Federal control are the property of the Government to be enforced by the Director General of Railroads: Dupont de Nemours & Co. *v.* Davis, 264 U. S. 456. This being so, the statute of limitations has no application, as the statute does not run against the Government. The limitation of three years in the Transportation Act of 1920 is not retroactive and does not apply to the Director General: Dupont de Nemours & Co. *v.* Davis, 264 U. S. 456.

And there is no merit in the defendants' other contention, that the railroad's failure to collect the freight from Glatfelter discharged them from liability. The averments of the affidavit of defence make it unnecessary for us to consider the interesting point suggested by the defendants, whether the mere endorsement and delivery of a bill of lading by the consignee are in themselves sufficient to make the endorsee liable for freight.

The affidavit of defence avers: "When said shipment arrived at Middlesex, Pennsylvania, on or about Feb. 1, 1919, the defendants, upon being notified of its arrival, instructed the freight agent of the Pennsylvania Railroad, at Carlisle, Pennsylvania, J. M. Hoy, to deliver said shipment to George H. Glatfelter at Middlesex, Pennsylvania, only upon surrender to the plaintiff of bill of lading and payment of freight bills. The plaintiff's agent, J. M. Hoy, violated the defendants' instructions and delivered said shipment to said consignee without collecting the freight charges and tax on said shipment."

The Interstate Commerce Act nowhere provides who shall be liable for the freight; it prohibits only discrimination and the free carriage of goods. Ordinarily, the shipper is the one primarily liable for the freight, as it is he who engages the carrier; yet it is lawful for the carrier to agree to look exclusively to the consignee: Louisville & Nashville R. R. Co. *v.* Central Iron and Coal Co., 265 U. S. 59.

While the shipper is primarily liable for the freight, it is now clearly settled that the consignee is also liable if he exercises any acts of ownership over the goods: N. Y. Cent. & H. R. R. R. Co. *v.* York & Whitney, 256 U. S. 406; Pennsylvania R. R. Co. *v.* Cameron, 78 Pa. Superior Ct. 497, and American Ry. Express Co. *v.* Mohawk Diary Co., 250 Mass. 1, 9.

Here, the defendants are the consignees in an order bill of lading, and as such are, *prima facie*, the owners of the goods: Rosenbush *v.* Bernheimer, 211 Mass. 146, 149. The affidavit of defence shows that the defendants are the actual owners of the goods. They sold the goods to Glatfelter and allowed him the amount of the freight as a credit on the price.

Directing the railroad to deliver to Glatfelter made the defendants liable for the freight. A person liable for freight on an interstate shipment cannot relieve himself of this liability by instructing the railroad to collect from his consignee or customer. If the railroad neglects his instructions, his liability remains: Collins *v.* Union Transportation Co., 10 Watts, 384; Thomas *v.* Snyder, 39 Pa. 317, and Pennsylvania R. R. Co. *v.* Whitney & Kemmerer, 73 Pa. Superior Ct. 588, 593.

The exact facts of this case were involved in the recent case of New York Central R. R. Co. *v.* Ross Lumber Co., 234 N. Y. 261, and the court held the consignee liable. Pound, J., said:

"As to plaintiff, defendant stood in the relation of owner of the carload of lumber. The bill of lading designated it as consignee. That fact is in itself evidence of ownership. It does not appear from the agreed facts that plaintiff had knowledge or notice that defendant was not the owner or that defendant was not in fact such owner. The Schieck-Johnson Company might, for all

that appears, have been the agent of defendant, whose duty it was to take delivery on its behalf. As defendant was the presumptive owner, if it accepted the freight in the capacity of owner, the law implied a promise on its part to pay the charges. . . . It follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery, and the plaintiff was justified in treating it as owner of the goods. It thereby entered into the contract expressed in the bill of lading to pay the charges, and became liable to pay such charges unless the words 'deliver . . . upon payment of freight charges' discharged its liability when the carrier neglected to collect on delivery to the Schieck-Johnson Company.

"The liability of the consignee under these conditions is analogous to the liability of the consignor under the terms of the bill of lading that the consignee shall pay the freight. Such a direction does not exonerate the consignor from liability. The directions given by defendant neither modified the implied contract between carrier and consignee, whereby the consignee assumed liability for freight charges, nor amounted to an offer to accept the goods only on condition that freight charges should be collected of the Schieck-Johnson Company. Doubtless, plaintiff might have refused to deliver to the Schieck-Johnson Company and retained the goods until its lien was satisfied by the payment of the freight. Doubtless, defendant, by its instructions, recognized such right when it qualified its directions as to delivery. But the directions were for the benefit of the carrier, not for the benefit of the defendant. The carrier was not bound at its peril to enforce payment of freight from the Schieck-Johnson Company, and its right to resort to the defendant under the contract was not impaired by delivery of the freight under its direction. The language used in defendant's letter was not contractual. Its effect was merely to give plaintiff an option to demand payment from the person to whom it delivered the goods."

It is hard on the defendants to be obliged to pay the freight twice, but Glatfelter is liable to the defendants for the freight, though no doubt he is insolvent.

The rule for judgment is made absolute.