## D. L. & W. Railroad Co. v. Ludwig, Appellant.

290

. Submitted April 16, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Clyde Gibson,* for appellant.

*G. W. Morgan* and *D. R. Reese,* and *Weingartner & Mercer,* for appellee.

Opinion by Porter, P. J., July 12, 1928:

This is an action to recover the lawful freight and demurrage charges on an interstate shipment of coal. The defendant filed an affidavit, in lieu of demurrer, raising questions of law as to the sufficiency of the averment contained in the statement of claim. The court, after argument, held the statement of plaintiff to aver a good cause of action, overruled the demurrer and made an order allowing the defendant fifteen days within which to file an affidavit of defense. The defendant failed to file any affidavit of defense to the merits, and, after the lapse of three months, the court, on motion of the plaintiff, entered judgment against the defendant for want of an affidavit of defense. The defendant appeals from that judgment and assigns for error the entry thereof. His contention is based upon the ground that plaintiff's statement does not disclose a good cause of action.

The statement and exhibits thereto attached sufficiently averred, in substance, that this defendant shipped from his mine at Kaylor, Pennsylvania, the two carloads of cannel coal in question, consigned to Lampman-Wertz Corporation, Cortland, New York, via certain lines of railroad, the plaintiff company being the final carrier; that the cars were transported by the railroads to said destination and the consignee refused to accept the coal, upon the ground that it was not of the grade and quality ordered. No bill of lading was issued for this shipment. The W. L. Scott Coal Company, of Erie, Pa., had ordered of the defendant two cars of a certain grade and quality of coal to be shipped to the Lampman-Wertz Corporation. The defendant loaded the two cars in question with coal not of the grade and quality ordered and, after loading said coal, prepared and, by his agents, placed on each of said cars a "Scale Card," giving instructions as to the disposition and shipment of said cars. These "Scale Cards" named the W. L. Scott Coal Company

a's consignor. The cars were then transported to Butler transfer, where they were weighed, and freight way-bills to cover the movement of each car were prepared in accordance with the shipping instructions upon the "Scale Cards." The freight and charges here involved were in accordance with the tariffs filed with the Interstate Commerce Commission. After the consignee had refused to accept the coal, upon the ground that it was not of the grade and quality ordered, the defendant, having been notified of the fact, advised the plaintiff company that he could not sell the coal and authorized the plaintiff to dispose of the coal to the best advantage and, if necessary, to waste it in order to release the cars. It thus appeared that the defendant, so far as the carrier was concerned, did not attempt to assert that the coal which he shipped was the kind which the W. L. Scott Company had ordered. The railroad company obeyed the instructions of this defendant and sold the coal, deducted the sum realized from such sale from the amount of the freight and demurrage charges allowed by law and, upon the refusal of the defendant to pay the balance due, brought this action.

The carriers received this shipment from this defendant. "Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges, and his obligation is ordinarily a primary one. This is true, even where the bill of lading contains ...... a provision imposing liability upon the consignee, for the shipper is presumably the consignor, the transportation ordered by him is presumably on his own behalf, and a promise by him to pay therefor is inferred (that is, implied in fact), a's a promise to pay for goods is implied, when one order's them from a dealer. But this inference may be rebutted, as in the case of other contracts. It may be shown, by the bill of lading or otherwise, that the shipper of the goods was not acting on his own behalf;

that this fact was known by the carrier; that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever therefor; or that he should assume only a secondary liability": L. & N. R. R. Co. v. Central Iron & Coal Co., 265 U. S. 67; P. R. R. Co. v. Whitney & Kemmerer, 73 Pa. Superior Ct. 588. This defendant shipped the coal in question and there is nothing in the averments of plaintiff's statement which would rebut the inference that he assumed the obligation to pay the freight and other charges imposed by law. The defendant having received an order for a shipment of coal of a certain grade and quality was without authority to name his purchaser as the consignor of a shipment of coal of an entirely different kind. The insertion of the name of the W. L. Scott Coal Company as the consignor in the "Scale Cards" which defendant put upon the cars was his own act, made without authority of the consignor whom he named, and did not constitute a valid contract between this defendant and the carrier. The assignments of error are overruled.

The judgment is affirmed.