## CENTRAL R. CO. OF NEW JERSEY v. H. H. LINEAWEAVER CO.

Circuit Court of Appeals, Third Circuit.
June 21, 1928.

No. 3803.

Carriers ⟨⟩196—Whether seller, directing shipment by another, was consignor, and liable for freight charges, held for jury.

Whether seller of coal, directing mining company's foreman to make shipment, was consignor, held a question for the jury, in railroad company's suit against him for freight charges.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action by the Central Railroad Company of New Jersey against the H. H. Lineaweaver Company. From a judgment for defendant, plaintiff brings error. Judgment vacated, and case remanded, with directions.

Edwin A. Lucas and Arthur G. Dickson, both of Philadelphia, Pa., for plaintiff in error.

Isaac A. Pennypacker, Alfred G. Muench, and Pepper, Bodine, Stokes & Schoch, all of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Central Railroad Company of New Jersey, a corporation of that state, brought suit against H. H. Lineaweaver Company, Inc., a corporation of Pennsylvania, hereafter called Lineaweaver, to recover some $3,800, being the freight and demurrage charges on certain cars of coal alleged to have been shipped by Lineaweaver, and which the consignee refused to accept. On conclusion of the defendant's testimony the court granted a compulsory nonsuit, whereupon this appeal was taken, and the question involved is: Was it, under the evidence, the right of the court or the province of the jury to determine whether Lineaweaver was the consignor of the coal?

After considering the proofs, we are of opinion they were such that this question was one of fact, upon which men of reasonable mind, and therefore the jury, might draw different conclusions. In reaching that conclusion we note these elements of proof: On December 1, 1921, Lineaweaver sold the coal in question to Pattison & Bowns, of New York, hereafter called Pattison. The sale was evidenced by a letter from Lineaweaver to Pattison, which acknowledged "order given us to-day, which has been entered, * * * 10 cars of Mahanoy Plane barley at $1.00 per gross ton mines. Consigned to: C. Pardee Works, Perth Amboy, New Jersey, via C. N. J. R. R. Ship one car per day. Terms of payment: 15th of the month following shipment." The letter further referred to Lineaweaver and Pattison, respectively, as buyer and seller, and provided that "originating bill of lading weights or originating railway scale weights, as the case may be, to govern all settlements." It further provided: "Every effort will be made for the prompt and faithful performance of this contract, but seller will not be responsible for delivery hereunder, if prevented by strikes," etc.

Standing by itself this paper tended to show that Lineaweaver sold the coal in question, fixed the price and time of payment, specified the carrier, made provision for the carrier's scales determining a weight binding on both, recognized seller's obligation to ship, and for a release in case shipment was prevented by strikes, car shortage, etc. Being thus under contract to ship and deliver a specified carrier, this paper tended to show

asserted ownership of the coal by Lineaweaver and agreement to deliver the coal so sold to the named railway for carriage. On the same day Lineaweaver wrote Eisenhart, foreman Mahanoy Plane Coal Co.:

"Dear Sir: We are inclosing you herewith an order for ten cars of barley coal to be shipped at the rate of one car per day to C. Pardee Wks., Perth Amboy, N. J., via P. & R., Bound Brook Jct., C. R. R. of N. J. * * * The order for Pardee Wks. is a sample shipment and one that will result in large tonnages, providing the coal we ship them is satisfactory."

This letter and the accompanying order were in keeping with the sales contract above recited, and tend to show that Lineaweaver was complying with its obligation as seller, viz. ordering the specified barley coal from a mine, directing shipment on the specified railroad, and by its general purport and the language "providing the coal we ship them is satisfactory," indicating Lineaweaver was the shipper of the coal. Acting on this order, and using four printed forms Lineaweaver furnished, the coal was reported to Lineaweaver as shipped, the form stating: "Shipped by Mahanoy Plane Coal Co., per P. & R. Ry., account H. H. Lineaweaver & Co., Inc., the following cars of Hudson coal for C. Pardee Wks., Perth Amboy, N. J., via P. R., Bound Brook Jct., C. R. R. of N. J." Three of these forms as above filled out, were delivered to the railroad, the coal was later weighed, and one form delivered to Lineaweaver, after the weighmaster had entered on them the scale weights of the coal. The original was retained by the weighmaster and one copy retained by the railroad for billing purposes. No bill of lading was issued, and the course pursued was evidently a practice recognized by Lineaweaver's stipulation in the contract of sale, viz.: "Originating bills of sale, or originating railway scale weights, as the case may be, to govern."

From the above it will be seen that there was evidence tending to show that, by their several courses of conduct, both the railroad and Lineaweaver acted toward each other as carrier and consignor, and that beyond the physical delivery of the coal, which by Lineaweaver's own form was "account of H. H. Lineaweaver & Co., Inc.," the mining company had no connection with the shipment, and the routing, ascertainment of weight, and report thereof were made by the railroad to Lineaweaver and to no other person or party. The consignee refused to take the coal, and the railroad notified Lineaweaver and Pattison, but both disclaimed responsibility

for freight or demurrage. These are other elements—bills rendered by Lineaweaver to Pattison for the coal, and letters asserting Lineaweaver's right to recover the value on the basis of its sale contract, etc.; but, without referring to them in detail, it suffices to say we regard the proofs were such as made it the right of the railroad to have the jury determine the issue whether, as to it, Lineaweaver was the consignor of the coal.

We have not overlooked or disregarded the testimony that Lineaweaver was the sales agent of the Mahanoy Plane Coal Company, on which the court based its action in taking the case from the jury; but, apart from the fact of what the nature of that agency was, whether it consisted of selling the coal for the account of the colliery, or Lineaweaver's taking all the product of the mine for sale on its own account, and of the further fact that the proof was that Lineaweaver owned all the stock of the Mahanoy Plane Coal Company and kept its books, we do not see how the general fact of the existence of an agency could affect the railroad, and render of no moment the proof of the relation of sole consignor and shipper, which the documents and acts of the parties quoted above tended to show.

The judgment below will therefore be vacated, and the case remanded, with directions to vacate the nonsuit, reinstate the case, and proceed in due course.