## Palmer et al., Trustees, v. Cassler et al.

*John J. Pentz* and *Morris L. Silberblatt,* for plaintiffs.

*Edward T. Kelley,* for defendants.

BELL, P. J., October 6, 1947.—Action in assumpsit was brought by the trustees of the New York, New Haven and Hartford Railroad Company, against defendant partnership, for freight, demurrage and other

charges incidental to the shipment of 51 cars of coal, totaling 3,497.9 tons, to the Castle Coal Company in New York. The cars originated on the Pittsburgh & Shawmut, Baltimore & Ohio, and Pennsylvania Railroads. The point of delivery was the New York, New Haven and Hartford, which gave notice to defendant that the cars were refused by the consignee; the statement alleging that defendant failed to give any instructions for the disposal of the coal, as result of which it was unloaded at a cost of $956.96. In accordance with the ruling of the Interstate Commerce Commission, the coal was sold for $175. The charges total $16,700.56, on which there is a credit of $175, plaintiff suing to recover the sum of $16,525.56, with interest from April 25, 1944.

The above-mentioned facts are not disputed. Defendants, in their affidavit of defense, admit liability for one car in the amount of $240.60, but deny their responsibility for these charged, on the ground that they were not the owners or producers of the coal, but merely acting as agents for the producers. They deny they were the shippers of the coal. Defendant filed a counterclaim for commissions in the amount of $909.95, being five cents per ton for the coal shipped. They also attach as Exhibit A a copy of a written contract between one of the producers and defendant, as to the relationship between the producer and defendant. The facts as to the amount of the various claims are not in dispute; the real issue being raised on the pleadings as to the relationship of defendant with the railroads, in the shipment of the coal.

On August 16, 1946, by a stipulation between the parties, this case was taken off the trial list for the parties to agree to a statement of facts. Being unable to do so, the court was then asked to fix a date when disputed testimony might be taken for trial before the court without a jury, in accordance with the provisions of the act of assembly governing the same. Nothing

having been done, it was put on the argument list for January 17, 1947, and again continued. Depositions on behalf of plaintiff were taken April 17, 1947, and testimony was taken before the court on June 20, 1947, and July 17, 1947. Counsel were requested to present their requests to the court within 15 days after the testimony had been lodged; the testimony being lodged July 19, 1947. Plaintiff's requests for findings of fact and points of law were filed August 6, 1947. Requests on behalf of defendant were delayed until September 27, 1947. Counsel desire the court to dispose of the case under the provisions of section 1 of the Act of April 22, 1874, P. L. 109, 12 PS §688.

There is no merit to defendant's counterclaim, as any loss of commissions on the part of defendant could not have been caused by any action of plaintiff. Defendant, at the taking of testimony, and in its requests for findings, makes no mention of its counterclaim and recommends that judgment be entered in favor of plaintiff for the amount they admit to be due, ignoring the counterclaim; so any finding on behalf of defendant's counterclaim is refused and we will follow the same course as counsel and pay no further attention to it.

Plaintiff has in writing, requested the court to find 27 separate findings of fact and four points of law. Defendant has filed nine findings of fact and 10 points of law, though there is no request for the court to pass on them, as set out in the Act of 1935.

It is not disputed that 47 cars of coal in one group and four additional cars in another group, a total of 51 cars of coal, were all consigned to the Castle Coal Company and rejected by them. The consignee ordered the coal from defendant, who supplied said consignee's name either to the railroad directly, or to the producer, who shipped the cars to said consignee, billing them, with defendant either as shipper, or shipped on account of defendant. The Castle Coal Company refused

to lift the cars; they were held; defendant averring it notified the producers of the coal, who are not parties to this law suit; and following the failure to receive instructions as to what to do with the coal, it was dumped and then sold under the Interstate Commerce Commission's ruling. Defendant contends that they were merely acting as agent for the mine owners, did not own the coal, did not make out any of the waybills or freight slips, and that the liability, if any, for the demurrage, would rest with the owners of the coal; to wit, the mine owners. Plaintiff contends that the railroad company is not responsible for what the relationship is between defendant and the parties from whom they secured the coal, but that defendant is primarily responsible, as the coal was shipped to the Castle Coal Company on account of defendant, and according to the admitted instructions of defendant.

Many of the requests for findings on behalf of plaintiff have to do with the various steps as to the ordering and shipping of these various cars of coal, and the relationship of the parties, which are not disputed. We will accordingly, affirm plaintiff's request for findings of fact nos. 1, 2, 3, 4, 5, 6, 9, 10, 13, 17, 18, 19, 21, 22, 23, 25, 26, and 27; those not confirmed, stating that defendant purchased the coal f. o. b. the cars. The first request for findings of facts, filed on behalf of defendant, is approved and the remainder rejected, as they bear upon the ownership of the coal. It is our view that the right of the railroad company to recover for freight does not hinge on the ownership of the articles shipped, which may or may not be material. This is a suit to collect from the party responsible. While the making out of the manifests was not done by defendants individually, it is not disputed that they secured the consignee, the identity of the cars, and the route over which they were to be shipped was according to their instructions. While defendant denies

the physical making out of the shipment instructions, they admit that the information contained on the shipping instructions was furnished by them, either to the railroad direct, where some agent filled it out; or to the producer of the coal, who did so. The coal was shipped with either defendant named as shipper, or shipped in account of the Cassler Coal Sales Agency. Defendant avers it was not the actual shipper, and that the owner would be responsible, despite this fact. Undoubtedly, the owner of the coal may be, and often is responsible for the freight charges. Likewise, the consignee is often made solely responsible, but from the railroad's standpoint, we do not feel that the right of recovery depends upon the real owner of the article shipped, but rather, upon who ordered the shipment and was responsible for it being shipped in the manner which was done.

In the case of Central Railroad of New Jersey v. H. H. Lineaweaver Co., 27 F. (2d) 25, defendant was sales agent between the producer of the coal and the recipient. Defendant directed the mines to ship 10 cars of coal to the consignee. They disclaimed any responsibility for the demurrage charges. The court pointed out that defendant had sold the coal, fixed the price, the time and terms of payment, and terms and circumstances of delivery. Lineaweaver claimed he was sales agent for the mine. The court entered judgment in his favor. This was reversed by the appellate court, which held (p. 27):

"We do not see how the general fact of the existence of an agency could affect the railroad, and render of no moment the proof of the relation of sole consignor and shipper, which the documents and acts of the parties quoted above tended to show."

It may be shown that the shipper of the goods was not acting in his own behalf; and where this fact is known by the carrier, and that the consignor was not assuming liability, the consignor may not be liable.

The consignor who ships the coal is primarily liable to the carrier for the freight charges. D. L. & W. RR. Co. v. Ludwig, 94 Pa. Superior Ct. 289; Chicago, Burlington & Quincy RR. v. Berry's Sons, 86 Pa. Superior Ct. 1.

There is implied contract on the part of the shipper of the coal to pay the freight charges.

"A shipper who calls upon a public carrier to perform his duty and transport goods to a consignee by him designated, is primarily liable for the lawful charges resulting from the transportation": Pennsylvania Railroad v. Whitney & Kemmerer, 73 Pa. Superior Ct. 588. (Syllabus.)

Defendant testified that he was not the owner of the coal, being only a commission agent; that he secured the orders, invoiced the coal, inspected it, but that the purchase money was to be handled through the Curwensville National Bank, which would remit to the producer, less a commission deducted for defendant. Defendant Cassler would not answer that there was any agreement between himself and the respective purchasers, whom he claims are liable for these demurrage charges, as to the ownership of the coal. He said he had notified the producers that the coal had been refused. There was produced a copy of a written agreement between P. B. Boyer and defendants, under which four cars of coal were shipped over the Pittsburgh & Shawmut Railroad. These waybills show the Cassler Coal Company to be named as shipper. There is attached as plaintiff's Exhibit H, an agreement dated February 14, 1944, between P. B. Boyer and the Cassler Coal Sales Agency. There is likewise offered an agreement dated June 3, 1941, between James F. Eyerly and the Cassler Coal Sales Agency, to cover the coal shipped from the Hillside Coal Company. Defendants have testified that the remaining coal which was shipped, was shipped under verbal arrangement of a

similar nature. Mr. Boyer testified that Cassler gave him billing instructions; that he didn't ship any coal except where defendant told him; that when the cars were loaded, he reported to Cassler and the railroad would take them away; and that after the coal was loaded, Cassler did the billing; that the Cassler Coal Sales Agency did all the billing, stating: "We load them; they take them in, and Cassler does the billing"; and again:

"They took it into the Shawmut yard there and Cassler done the billing of it wherever it was to go. He gave the billing instructions."

He testified that the consignee was procured by the Cassler Coal Sales Agency; that he gave him a price of so much a ton net to him; stating: "The coal went up and down, and then the price was, he set me a net price on the car."

James Eyerly, shipping over the Pennsylvania Railroad as the Hillside Coal Company, testified that he was to produce the coal and the Cassler Coal Sales Agency was to act as shipper; that he sold the coal f. o. b. the mine. Thirty-six of the cars that were refused are from this mine. On cross-examination, Eyerly was asked:

"Q. And he merely produced the orders for you, didn't he, and he got a commission for doing it, didn't he?

"A. Well, he got paid I suppose, yes.

"Q. And he never owned the coal?

"A. The coal was sold direct to the Cassler Coal Sales Agency.

"Q. He arranged to get a customer for you, didn't he?

"A. Well, how come I had to bill him? Why didn't I bill the customer then?"

Mike Deromo testified that he had sold the coal to the Cassler Coal Sales Agency at so much a ton f. o. b. cars; that Cassler inspected the coal and shipped it

out. Seven cars were shipped under this arrangement; that neither he nor any one in his organization made out the shipping instructions.

Martin Hefferton testified that he was employed by Banks & Futch; that Banks & Futch had taken over the Conley Coal Company, which had had a written agreement with the Cassler Coal Sales Agency; that Cassler would call and tell them where to ship the cars and then they would make out the slips; all they did was to load and ship it the way Cassler directed. There were 16 cars of coal from this operation.

Harry Finberg of the Finberg Coal Company, testified that 16 cars of coal were sold to the Cassler Coal Sales Agency, which gave them instructions where the coal was to be shipped; and being asked whether Cassler was acting as agent or buying direct, he testified they were buying the coal direct. There was some dispute as to whether he may have been paid direct by the Cassler Coal Sales Agency or not. The witness stated he thought they had been paid by the Curwensville Bank for some, and by Cassler for others. He was asked whether defendant was buying the coal, and he said, "Yes, f. o. b. the tipple".

The two sales agreements which defendant has offered and which they contend show they were only a sales agent, do not, in our opinion, relieve defendant from liability. They provide that the Cassler Coal Sales Agency shall be exclusive sales agent, and while they provide that the agent shall have a certain commission, the fourth paragraph reads as follows:

"Shipping and invoicing shall be made by the agent. . . . Further, remittance by the agent and acceptance by the Mining Company shall be made on or before the 20th day of each month during the term of this contract, covering all coal sold and delivered to customers through the agent for the preceding calendar month."

The fifth paragraph provides that the mining company shall load on railroad cars for the agent coal which shall be subject to inspection by the agent.

The sixth paragraph authorizes the agent to enter into contracts for the sale and delivery of the coal in their own name, and to handle the transaction in the same manner as though the agent were the producer of the coal, enabling the agent to enforce collection of the accounts.

Defendant's Exhibit I is similar to Exhibit H, except two paragraphs, which are not material.

Under plaintiff's testimony, there is ample evidence to sustain the finding of fact requested by plaintiff, that defendant was in real practice, purchasing the coal f. o. b. the cars, and that the arrangement to have the remittances made through the Curwensville Bank was an arrangement made for defendant's benefit, due to their poor credit rating. We do not feel that such finding is necessary in this case, as under defendant's own testimony, the shipping and invoicing was to be done by them, they were the exclusive agents, they inspected the coal after it was loaded on the cars, gave all instructions thereafter, and could and did enforce collection for the coal. Defendant's testimony is sufficient to sustain a finding that they were the actual shippers of the coal, irrespective of who may have been the real owner. It is unnecessary for us to affirm the findings of fact as to the ownership of the coal, this not being a contest between the producer and defendant; and we will refuse to affirm the plaintiff's request for points 7, 8, 11, 12, 14, 16, 20, and 24 at this time; as well as the requests submitted by defendant, exclusive of the first.

As to the points of law submitted by plaintiff, the first is refused, as the ownership of the coal is not material in our view, at the present time. Points of law 2, 3, and 4, submitted by plaintiff, are affirmed.

Defendant has submitted nine points of law, there being cited cases in support of same. The names of

the cases are not given, but only the column and page. We doubt if defendant desires us to rule on these requests of law, or the name of the cases would have been given. Several of the citations have no relevancy to this matter, and there being no names of litigants, it is impossible to check further. On the statement of the law contained, points 1, 2, 3, 4, and 5 would be refused, as well as point 10. Points 6, 7, 8, and 9 would be affirmed.

For the reasons given in the foregoing opinion, we find that plaintiff is entitled to a judgment against defendant in the amount of $16,525.56, with interest from April 25, 1944. The prothonotary is directed to mail to counsel for both plaintiff and defendant a copy of this opinion, which is furnished herewith, with directions that if no exceptions are filed within 30 days from the date hereof, judgment shall be entered in the amount of $16,525.56, with interest from April 25, 1944.