### DAVIS, AGENT v. ALLEN *ET AL.*

#### (117 S. E., 547)

1. CARRIERS—CONSIGNOR HELD PRIMARILY LIABLE FOR FREIGHT.—Consignor with whom the contract of shipment is made is primarily liable for the payment of freight charges, whether he is owner of the goods or not.

2. CARRIERS—CONTRACT ON CONSIGNEE'S PART TO PAY FREIGHT NOT IMPLIED FROM DESIGNATION AS CONSIGNEE.—In the absence of an acceptance of the goods by consignee or of other facts tending to prove that the ownership and *jus disponendi* is in consignee, a contract on consignee's part to pay carrier's charges may not be implied from the mere presumption of ownership arising from his designation by shipper as consignee.

3. CARRIERS—ACCEPTANCE OF FREIGHT OBLIGATES CONSIGNEE TO PAY CHARGES.—A contract to pay carrier's charges will ordinarily be implied from consignee's acceptance of the freight.

4. CARRIERS—CONSIGNEE COUNTERMANDING ORDER AND REFUSING GOODS NOT LIABLE FOR DEMURRAGE.—Where the only evidence that the shipper had any authority to ship is a telegram sent by consignee purporting to countermand the order, shipper wired consignee to "unload the car and send me what you think is right," and consignee refused the shipment, consignee is not liable for demurrage.

5. CARRIERS—CONSIGNEE COUNTERMANDING ORDER BEFORE CARRIER SECURED CONTROL OF GOODS NOT LIABLE FOR DEMURRAGE.—Where consignee countermanded the order on November 15th, carrier did not secure control of goods until November 20th, bill of lading was not issued until November 20th, and consignee refused the goods, consignee was not liable for demurrage.

Before W. C. COTHRAN, special Judge, Florence, May, 1922. Affirmed.

Action by James C. Davis as agent of Railroads against C. R. Allen, trading as the Southern Fertilizer Co., and Jesse W. Finklea. Judgment for defendants and plaintiff appeals.

---

NOTE.—The question of liability of consignor for freight is discussed in note in L. R. A. 1917A, 665.

On liability of shipper for freight and demurrage upon refusal of consignee to accept goods see note in 52 L. R. A. (N. S.) 398.

*Messrs. F. L. Willcox* and *S. M. Wetmore,* for appellant, cite: *Where evidence is incompetent because irrelevant failure to object cannot make it relevant:* 1 Wig. Ev., 61 Sec. 18; 28 S. E., 409. *Possession of carrier is possession of consignee:* 4 Ell. R. R.'s Sec. 1414; 79 S. C., 519; 30 S. C., 615; 207 U. S., 230; 79 S. C., 519; 30 S. C., 615; 207 U. S., 230. *Liability of carrier commences on delivery to it:* 78 S. C., 302; 3 S. C., 421; 116 A. S. R., 83. *Even before issuance of Bill of Lading:* 116 A. S. R., 83; 30 S. E., 14. *Consignee liable for freight and charges:* 90 S. E., 149.

*Messrs. Whiting & Baker,* for respondent, cite: *Consignee not liable for charges in absence of agreement:* 10 C. J., 445, 446; 68 N. J. L., 165; 34 Am. Rep., 707; 202 Fed., 720; Ann. Cas., 1917-C 862.

May 8, 1923.

The opinion of the Court was delivered by MR. JUSTICE MARION.

The plaintiff, as Agent for the United States Railroad Administration, brought this action against the defendants, Allen, as shipper, and Finklea, as consignee, to recover $442.90, and interest, on account of demurrage charges on a shipment of manure, alleged to have been consigned by Allen, trading as the Southern Fertilizer Company, from the Government Remount Station near Charleston, to Finklea at Pamplico, S. C. Finklea, the consignee, refused to accept the shipment, which appears to have been held on demurrage at Pamplico from about November 29, 1918, until January 29, 1919. On the trial in the Circuit Court, Hon. W. C. Cothran, special presiding Judge, directed a verdict for the plaintiff against the defendant Allen, the shipper, and a verdict in favor of the defendant Finklea, the consignee. From the judgment on the directed verdict for the defendant Finklea, the plaintiff appeals.

The appellant's contentions are substantially these: That the evidence tends to establish, or is reasonably susceptible of the inferences, that the shipment of manure was made upon the *bona fide order* of the defendant Finklea, and that it had been delivered to and accepted by the railroad carriers on November 14, 1918, and was then in course of transportation, when Finklea countermanded the order by a telegram to Allen, the shipper, under date of November 15, 1918; that the shipment was duly transported to destination and notice thereof extended to the consignee; that from those facts, if so found by the jury, the defendant Finklea would be liable as a matter of law for the demurrage charges; and that in such view the Circuit Judge erred in not submitting the case to the jury. In support of that view appellant argues that when Finklea, the consignee, permitted or authorized the shipper to deliver the freight to the carriers for transportation, immediately upon such delivery he became the presumptive owner of the goods for whose account and benefit the subsequent service of transportation was rendered, and that such presumptive ownership and *prima facie* liability of the consignee for the carrier's charges (Hutchinson on Carriers [3d Ed.] § 807) was not as matter of law rebutted by the consignee's countermand of the order and refusal to accept the freight.

In the consideration of the question presented certain 1-3 general principles are pertinent. "The consignor with whom the contract of shipment is made is primarily liable for the payment of freight charges, whether he is the owner of the goods or not. A contract to pay freight is to be implied from the mere fact that the consignor has placed the goods with the carrier for the purpose of being carried to their destination." 10 C. J., 445, § 699. *Hayward v. Middleton,* 3 McCord, 121. But "there is no contractual relation between the carrier and the consignee by the mere designation of the latter as consignee which obligates him to receive the goods or to pay the freight charges,

and he is not liable therefor in the absence of an agreement express or implied." 10 C. J., 445, § 700. From the consignee's receipt and acceptance of the freight a contract to pay the carrier's charges will ordinarily be implied. 4 R. C. L., 858, § 310. *Central R. Co. v. MacCartney,* 68 N. J. Law, 165; 52 Atl., 575. *Hatch v. Tucker,* 12 R. I., 501; 34 Am Rep., 707. *Union Pac. R. Co. v. Smelting, etc., Co.,* 202 Fed., 720; 121 C. C. A., 182. *Penn. R. Co. v. Titus,* 216 N. Y., 17; 109 N. E., 857; L. R. A. 1916E, 1127; Ann. Cas., 1917C, 862. But, in the absence of such receipt and acceptance of the goods by the consignee or of other evidentiary facts tending to prove that the actual ownership and *jus disponedi* were in the consignee, a contract on the consignee's part to pay the carrier's charges may not be implied from the mere presumption of ownership arising from his designation by the shipper as the consignee, since the indulgence of such implication would be tantamount to mounting a presumption upon a presumption.

In the case at bar we think the Circuit Judge correctly held that the evidentiary facts were insufficient to establish an implied contract on the part of the consignee, Finklea, to pay the carrier's freight and demurrage charges. The consignee refused to accept the shipment. The only fact in evidence from which it could be inferred that the shipper had any authority at all to ship to the consignee is the statement in the record that a telegram was sent by Finklea under date of November 15th, which purported to countermand the order for the manure in question. In reply thereto the shipper wired the consignee to "unload the car and send me what you think is right." The evidence is susceptible of no other reasonable inference than that the shipper recognized the validity of the countermand and that there was no outstanding contractual relation between him and the consignee that obligated the consignee to take the shipment and pay the carrier's charges. Since this rebuttable presumption of ownership in the consignee arose out of

the carrier's contract with the shipper it would seem clear that the carrier could found no higher right upon the contract of carriage made with the shipper than the shipper himself could claim.   If the shipper had not an enforceable legal right to require the consignee to accept the shipment and pay the carrier's charges, we perceive no valid ground upon which the consignee's liability to the carrier can be predicated.   In that view it is immaterial whether the change in the contractual relations between the shipper and the consignee, as a result of which the consignee was relieved of obligation to accept the shipment, occurred before or after the delivery of the car to the carrier for transportation.

But if the contermand occurred before there was such delivery to the carrier as constituted a delivery to the consignee as the presumed owner, no basis, of course, remains for the contention that the consignee was liable by virtue of such presumed ownership and delivery.   The countermand was dated November 15th, and the bill of lading was not actually issued by the carrier until November 20th.   The bill of lading, apparently on the Seaboard form, had been made out by the shipper's clerk on November 14th, and handed to the conductor of the train that moved the car from the Remount Station on November 14th.   But according to plaintiff's own witness, Heeseman, whose business it was to issue the bill of lading for the carrier and who was familiar with the methods and customs of handling the loaded cars from the Remount Station:

"The Seaboard had no control of the car until November 20th.   It was until then under the control of C. R. Allen or Southern Fertilizer Company.   It was exclusively under his control until the Seaboard issued the bill of lading on November 20th."

While ordinarily the title to goods and the right of disposition vests in the consignee immediately upon delivery to the carrier, even where there is no bill of lading (10 C. J., 228), under the facts to which the plaintiff's witness testified

in this case it cannot be concluded that the Circuit Judge·
erred in holding that the only reasonable inference from the
evidence was that there had not been such unqualified deliv-
ery on the date of the countermand as placed the shipment
beyond the control of the consignor. Certainly, in that view
of the facts, there can be no doubt that the verdict for Fink-
lea, the consignee, was properly directed.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE GARY, and WATTS, FRAISER, and
COTHRAN concur.