11322

### SOUTHERN RY. CO. v. COLLINS

#### (119 S. E., 833)

1. CARRIERS—BOTH PARTIES MAY INTRODUCE EVIDENCE AS TO CORRECT WEIGHT, AND HAVE THAT ISSUE SUBMITTED TO JURY, IN ACTION FOR ADDITIONAL FREIGHT CHARGES.—Where bill of lading stated that specified weight of shipment was subject to correction, and carrier brought action to recover freight charges on the theory of a mistake in the weight of the shipment, both parties were entitled to introduce evidence as to the correct weight, and have that issue submitted to the jury.

2. CARRIERS—PERSONS ACCEPTING FREIGHT UNDER ORDER NOTIFY BILL OF LADING LIABLE FOR ADDITIONAL FREIGHT CHARGES, DUE TO ERROR IN STATING WEIGHT.—Where consignor shipped goods to his own order by a bill of lading providing for notice to defendant, and defendant accepted the goods and paid the freight demanded, he was liable to carrier for an additional freight charge, due to an error in stating the weight of the shipment.

Before WHALEY, J., County Court, Richland, September, 1922. Reversed and remanded.

Action by Southern Railway Company against J. S. Collins. Judgment for plaintiff on a directed verdict, and defendant appeals.

The order of Judge M. S. Whaley, referred to in the opinion follows:

"The issue herein to be decided was, with the agreement of the parties, reserved for argument at a later date, since that involved was purely a question of law. Under the undisputed facts relative to this particular issue, is the railroad company entitled to maintain its action on an interstate shipment for an undercharge in freight against the defendant?

"The bill of lading showed that the machinery was consigned to Gibbes Machinery Company, notify J. S. Collins, the defendant. Upon arrival of the shipment Collins presented the bill of lading to the carrier, paid the freight as computed upon the basis of the weight as set ·forth in the bill of lading, and hauled the machinery to his place of business. The bill of lading specified a certain weight, but thereon appeared a notation that such weight was subject to correction. As a matter of fact, when the shipment was later weighed during transit, there was found a great discrepancy, although this was not brought to the attention of the agent at destination until some time later. Upon this difference in weight the amount asked for in this action is predicated as an undercharge.

"When Collins presented the bill of lading to the carrier, he was presumed to be the owner and entitled to the machinery. Nor is this rebutted. Indeed, his later conduct in connection therewith tends to strengthen such presumption. He dealt with it as his own. It is a well-established custom for shipments to be made in this manner and Courts have consistently held that 'unless there is some peculiar feature or circumstance affecting the case, the person who presents the bill of lading is deemed to be the consignee.' *Brown v. Railroad Co.,* 91 S. C., 377; 94 N. E., 754. Nor does it seem necessary in such a case that the bill of lading be signed by indorsement. The acts of the parties speak as well as such an indorsement could, where, as intended, there is a complete acceptance as owner by the party to be notified. *Hutchinson on Carriers,* (3d Ed.), § 807. Such person,

becoming the consignee, is liable for the freight charges. *Duncan v. United States Steel Co.* (D. C.) 244 Fed., 258: *Union P. Ry. Co. v. American Smelting Co.*, 202 Fed., 720; 121 C. C. A., 182. *N. Y. Ry. Co. v. York,* 215 Mass., 36; 102 N. E., 366. *Southern Flour & Grain Co. v. S. A. L. Ry. Co.*, 22 Ga. App., 403; 95 S. E., 997. In the last cited case the Georgia Court of Appeals held: 'The consignee of freight on an order notify shipment, who has paid the draft attached to the bill of lading and who owns the goods, cannot by refusing to accept the goods avoid payment of freight and demurrage charges.'

"It has also been held that this rule holds true, even where the consignee was a commission merchant and had settled with the shipper before he was called on by the carrier to pay the undercharge, if the agency was not disclosed to the carrier. *Cornelius Co. v. Central of Ga. Ry.*, 13 Ala. App., 533; 69 South., 331. *N. Y., N. H. & H. Ry. v. York,* 215 Mass., 36; 102 N. E., 366. *N. Y. C. & H. R. Ry. v. York,* 230 Mass., 206; 119 N. E., 855. In this State our Supreme Court has held that the transfer of a bill of lading carries with it the right to the goods, and makes the transferee for all lawful purposes, the consignee. *Brown v. A. C. L. Ry.,* 91 S. C., 378; 74 S. E., 754. *Layton v. Railway Co.,* 90 S. C., 323; 72 S. E., 988.

"It having been agreed that a verdict could be directed without having the foreman of the jury sign the same, it, is, therefore, ordered that a verdict be, and the same is hereby, directed in favor of the plaintiff for the sum of $97.25, and for the costs of this action."

*Mr. C. T. Graydon,* for appellant, cites: *Question of fact for jury:* 106 S. C., 419; 106 S. C., 123; 107 S. C., 334. *Who is owner of goods in shipment:* 91 S. C., 377.

*Messrs. Thomas & Lumpkin,* for respondent, cite: *Speculative evidence:* 113 S. E., 465. *Person with bill of lading presumed to be consignee:* 91 S .C., 377; 90 S. C., 323;

Hutch., Carriers (3d Ed.), Sec. 807. *And as consignee is liable for freight charges:* 244 Fed., 258; 202 Fed., 720.

November 5, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record:

"This case was tried before Hon. M. S. Whaley and a jury, in September, 1922. The County Judge decided that there was no issue of fact involved, and during the trial of the case, after the evidence was in, dismissed the jury, to render a decision later on the question of law.

"The evidence on the part of the plaintiff consisted of a bill of lading, dated June 15, 1920, from Ft. Valley, Ga., with the consignor, Gibbes Machinery Company, consigned to order of Gibbes Machinery Company, at Wateree, S. C., notify J. S. Collins at the destination. The bill of lading stated further on its face that the articles consisted of a carload of gin machinery, and that the weight of the same, subject to correction, was 20,000 pounds. The bill of lading was standard in form and contained, among other provisions which are immaterial to the case at bar, the following:

" 'Section 8. The owner or consignee shall pay the freight and average, if any, and any other lawful charges accruing on said property, and, if required, shall pay the same before delivery. * * * '

"The bill of lading is signed by the agent of the railroad company, and also by the agent of the Gibbes Machinery Company.

"The plaintiff offered J. M. Bates, plaintiff's agent, who testified in substance that when the freight arrived it was delivered to J. S. Collins, the defendant, who was required to pay the amount charged on the bill, to wit, $95.79; that thereafter he received notice that the weight of the shipment was incorrect, and that the additional amount of freight due was $97.25, which he notified Collins of, and which

Collins refused to pay. Upon the bill of lading above re-ferred to being introduced in evidence, the defendant's counsel objected, on the ground that Collins, neither being the consignor nor the consignee, could not be bound by the terms and provisions of the bill of lading, and that he, not being a party to the bill of lading, was entitled to rely on the freight bill presented, and was under no obligation to pay the balance. The County Judge overruled this contention and allowed the bill of lading in evidence. On cross-examination Mr. Bates testified that the average load around Wateree for mules was 2,000 pounds to a load; that he would not put as much as 4,000 pounds on any pair of mules that he had.

"The plaintiff called W. M. Callahan, who swore that he weighed the carload of machinery in question, and that the net weight of the same was 40,300 pounds. It was admitted that the correct rate was 46½ cents per 100 pounds, and that the amount sued for represented the difference between the amount claimed and the amount paid. At the conclusion of the testimony a motion for directed verdict was made.

"By Mr. Graydon: Your Honor, we make a motion for a nonsuit on the ground that the consignee of this bill of goods—that the contract of carrying was between the Gibbes Machinery Company and the railroad, and not between Collins and the railroad, and any overcharge would have to be made against the Gibbes Machinery Company, for Collins is not a party to it, and if there had been an undercharge Gibbes Machinery Company would have had to sue for it, and the fact that it is an order notify shipment does not affect it, because the contract of carrying is between the Gibbes Machinery Company and the railroad, and the only right Collins had was to go there and get the shipment when the bill of lading was sent to him by the Gibbes Machinery Company.

. "The Court: This shipment started out, consigned to Gibbes Machinery Company, and in the meantime Collins had an arrangement with Gibbes Machinery Company—

"Mr. Lumpkin: Gibbes Machinery Company ordered this delivered to Collins.

"The Court: Now, about this mistake of freight—would Collins be considered to know that he would have to pay the freight? Mr. Lumpkin, your position is that Collins did not agree on any amount of freight and that once the weight was established, he would be bound by it under the Interstate Commerce Act?

"Mr. Lumpkin: Yes, sir.

"The Court: I will hear your testimony, Mr. Graydon.

"The defendant testified that he went to the office of the railroad at Wateree, and got the machinery in question, and hauled it in nine loads with the wagon; that it would not have been possible to haul 40,000 pounds in ten loads; that the machinery was now up in the ginhouse, and was put up before he was notified of the excess freight, and that he could not weigh it without more costs than the freight, but that, from the hauling of it and from estimating the weight on the floor, he was positive that the machinery did not weigh more than 20,000 or 25,000 pounds.

"Here the defendant and the plaintiff moved for a directed verdict, and the Court decided that there was no issue for the jury."

Thereafter, his Honor, the County Judge, filed an order, which will be reported.

The first exception is as follows:

1    "That his Honor, the County Judge, erred in refusing to submit to the jury the question as to how much the machinery weighed, it being respectfully submitted that there was ample evidence to go to the jury as to this fact, and that his Honor, the Judge, erred in refusing to allow it to be determined by the jury."

The provision in the bill of lading, that the weight therein specified was subject to correction, gave the plaintiff the right to bring an action to correct the mistake; but it also gave the consignee a similar right. Therefore, when the plaintiff undertook, upon the trial of the case, to prove that there was a mistake in the weight of the machinery, the defendant had the right to prove the correct weight. The rights of the parties in this respect were mutual. A contrary ruling would have the effect of depriving the consignee of his property without due process of law, and of an equal protection under the law. There was error, therefore, in the refusal to submit the issues of fact to the jury, and this exception is sustained.

The next exception is as follows:

2 "That his Honor, the County Judge, erred in holding that the defendant was liable for the excess freight, it being respectfully submitted that the defendant was not a party to the contract, and was only liable to pay such freight as was demanded of him, and any excess of that amount should have been paid by the consignor or the consignee, they being one and the same person in this instance."

The case of *Brown v. Railroad Co.,* 91 S. C., 377; 74 S. E., 754, cited in the order of his Honor, the County Judge, shows that this exception cannot be sustained, but is overruled.

Remanded for a new trial.