# Philadelphia and Reading Railway Company *v.* International Motor Company, Appellant.

*Carriers—Railroads—Freight charges—Consignor—Consignee—Liability of consignee.*

A consignee who does not accept a shipment, or exercise any authority over the same, and who is not the owner or real consignor, is not liable for freight charges.

A consignee who accepts the goods or exercises some act of dominion over them is liable for such charges.

But in the absence of such acceptance of the goods by the consignee, or of other evidentiary facts tending to prove that the actual ownership and right of disposal were in the consignee, a contract on the consignee's part to pay the carrier's charges may not be implied from the mere presumption of ownership arising from his designation by shipper as consignee.

Penna. Railroad Co. v. Descalzi, 59 Pa. Superior Ct. 614, distinguished.

Argued December 3, 1924. Appeal, No. 266, Oct. T., 1924, by defendant, from judgment of C. P. Lehigh Co., April T., 1923, No. 189, on verdict for plaintiff in the case of Philadelphia & Reading Railway Company v. International Motor Company. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit to recover freight and demurrage charges. Before RENO, P. J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of plaintiff in the sum of $412.55, and judgment was entered thereon. Defendant appealed.

*Error assigned* was refusal of defendant's motion for judgment non obstante veredicto.

*Harry Steckel,* of *Aubrey, Steckel & Senger,* for appellant.—The consignee having refused to accept the shipment was not liable for the freight charges: W. J. & Seashore R. R. Co. v. Whiting Lumber Company, 71 Pa. Superior Ct. 161, p. 165.

*Reuben J. Butz,* of *Butz and Rupp,* for appellee, cited: Pennsylvania Railroad Company v. Descalzi, 59 Pa. Superior Ct. 614.

OPINION BY KELLER, J., February 27, 1925:

This is an action to recover railway freight and demurrage charges from a consignee. The facts are not in dispute. The defendant, International Motor Co., bought from Blue Ribbon Products Co. 800 particular and specific steel I beams, "free on board cars at South Kearney, N. J.," and directed them to be shipped to Allentown, Pa., by Philadelphia & Reading Railway delivery. Blue Ribbon Products Co. loaded on board cars at South Kearney, N. J., and shipped to defendant at Allentown, Pa., via Philadelphia & Reading Railway Co., 800 steel I beams, but not the particular and specific I beams bought by defendant. The beams were shipped by one C. E. Schwarz, Second Lieutenant, Quartermaster and Assistant Transportation Officer, United States Army, acting at the instance of Blue Ribbon Products Co. and for its account, upon a straight bill of lading containing the provisions of the "uniform bill of lading," which stipulated, inter alia: "The owner or consignee shall pay the freight and all other lawful charges accruing on said property, and if required, shall pay the same before delivery." Defendant refused to accept delivery because the beams shipped were not the beams purchased and owned by it. The railway company sold the beams to pay freight and demurrage charges and sued defendant for the deficit remaining after such sale. The court below gave binding instructions for the plaintiff. In our opinion, this was error.

"Ordinarily the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even when the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefore is inferred (that is, implied in fact), as a promise to pay for goods is implied when one orders them from a dealer": L. & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 67, (BRANDEIS, J.). See also Portland F. M. Co. v. British & F. M. Ins. Co., 130 Fed. 860 (C. C. A.).

The liability of a consignee is different. The rule is stated in Corpus Juris (vol. 10, p. 445, sec. 700) as follows: "There is no contractual relation between the carrier and the consignee by the mere designation of the latter as consignee which obligates him to receive the goods or to pay the freight charges, and he is not liable therefor in the absence of an agreement express or implied......The consignee will be liable for freight charges by acceptance of the goods shipped under a bill of lading which contains the stipulation that the consignee shall pay the freight, or any similar provision, or even in the absence of such bill of lading in case he accepts the goods knowing that the carrier looks to him for payment and waives its lien by delivery of the goods; and [in case he receives the goods] the consignee should not be permitted to claim that he has no interest in the property and compel the carrier to look to others for payment of the freight." This statement of the law is sustained by the decisions. In P. C. C. & St. L. Ry. Co. v. Fink, 250 U. S. 577 (63 L. Ed. 1151), the Supreme Court of the United States, speaking through Mr. Justice DAY said: "The weight of authority seems to be that the consignee is prima facie liable for the payment of the freight charges when he accepts the goods from the

carrier." And it was held in that case that this meant the legal rate, irrespective of what may have been erroneously specified as the rate when delivery was made. In N. Y. Cent. & H. R. R. Co. v. York & Whitney Co., 256 U. S. 406 (65 L. Ed. 1016), the same ruling was made. The principle was concisely stated in the brief of the successful litigant, (L. Ed., p. 1017) as follows: "A consignee of an interstate shipment who accepts the property and pays the charges thereon demanded by the carrier at the time of delivery is liable for any balance of charges subsequently found to be due under the tariff. This liability is imposed on the consignee, although not a party to the original contract of shipment, because the consignee accepts the property transported, knowing that it is subject to a lien for the charges arising from the transportation, knowing or charged with the knowledge of the lawful tariff rates thereon, and knowing or charged with knowledge that the carrier may not properly ask or receive less than the full tariff charges." And in L. & N. R. Co. v. Central Iron & Coal Co., supra, Justice BRANDEIS said: "For under the rule of the Fink case, if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later." As it was held in the Central Iron & Coal Co. case that a shipper of goods is not primarily liable as consignor for the freight charges, if it be shown by the bill of lading or otherwise that he was not the owner of the goods nor acting on his own behalf in making the shipment; that this fact was known by the carrier; and that the parties intended not only that the consignee should assume an obligation to pay the freight charges, but that the shipper should not assume any liability whatsoever; it would seem that the consignee is also liable for the freight charges, irrespective of his acceptance of the shipment, if he is the owner and real consignor of the goods and the shipper is acting solely on his behalf in making the shipment.

It was so stated in Davis v. Allen, 117 S. E. 547, where the Supreme Court of South Carolina said: "From the consignee's receipt and acceptance of the freight a contract to pay the carrier's charges will ordinarily be implied. But in the absence of such receipt and acceptance of the goods by the consignee or of other evidentiary facts tending to prove that the actual ownership and jus disponendi were in the consignee, a contract on the consignee's part to pay the carrier's charges may not be implied from the mere presumption of ownership arising from his designation by shipper as consignee, since the indulgence of such implication would be tantamount to mounting a presumption upon a presumption" (p. 548). In C. B. & Q. R. Co. v. Evans, 228 S. W. 853, 854, the Kansas City court of appeals held that a railroad cannot recover in a suit against the consignee for freight, unless defendant was a party to the contract of transportation or had received or accepted the freight. "The consignee impliedly agrees to pay the charges if he accepts the goods with notice that the carrier has a lien for a specified amount, thereby depriving the carrier of its lien." In Penna. R. Co. v. Titus, 142 N. Y. Supp. 43, it was held that while a consignor or shipper is liable for freight by express contract between him and the carrier for transportation of goods, there is no contractual relation between the carrier and the consignee by the mere designation of the latter as consignee, which obligates him to receive the goods and pay the freight; his liability for the freight resting entirely on an implied contract arising on his acceptance of the goods from the carrier with notice of the carrier's lien which is terminated by delivery. This case was reversed by the court of appeals (109 N. E. 857) on another point—holding that the consignee, on acceptance of the goods, was liable for the legal freight rate, though an error was made at the time of delivery—which is in accord with the Fink case, supra. In B. & O. R. Co. v. Luella C. & C. Co., 81 S. E. 1044, the Supreme Court of West Virginia said: "Assuming that

the consignee was justified in refusing to accept, for there was no duty on the carrier to test the question of ownership between consignor and consignee, it was not liable to plaintiff for the freight" (p. 1045). These decisions are supported by numerous other cases, among them: U. P. Ry. Co. v. American S. & R. Co., 202 Fed. 720 (C. C. A.—SANBORN, J.); Cent. R. R. of N. J. v. MacCartney, 52 Atl. 575, 68 N. J. L. 165 (PITNEY, J.); Penna. R. Co. v. Townsend, 100 Atl. 855, 90 N. J. L. 75; N. Y. N. H. & H. R. Co. v. Sampson, 110 N. E. 964 (Mass.); Merrick v. Gordon, 20 N. Y. 93, 97; Wabash Ry. Co. v. Bloomgarden, 180 N. W. 443 (Mich.). They rule that the right of the carrier to collect freight charges from the consignee is based on the implied contract arising from the receipt of the goods by him or from his being the real consignor by reason of his actual ownership and jus disponendi of the goods. See also 4 R. C. L. 857, 8, sec. 310. It must be remembered that in the present case the contract of sale called for the delivery of the 800 I beams purchased by defendant "free on board cars, South Kearney, N. J.,"—so that the loading of the cars by Blue Ribbon Products Co. or its representative, was not done as the agent of the defendant but on its own account in carrying out the contract of sale: Virginian Ry. Co. v. Stoke, 113 S. E. 704 (Va.). The defendant, therefore, was not chargeable with the error of the seller or its representative, Schwarz, in loading the wrong I beams on the cars.

In all of the cases cited in support of the ruling of the learned court below, the goods were either received or accepted by the consignee, or some act of dominion exercised over them by him from which a contract to pay the charges might be implied, except possibly one, Penna. R. Co. v. Descalzi, 59 Pa. Superior Ct. 614. Thus in Penna. R. Co. v. Crutchfield, 55 Pa. Superior Ct. 346, and P. & R. Ry. Co. v. Baer, 56 Pa. Superior Ct. 307, the consignee received the goods; while in P. & R. Ry. Co. v. Parry, 66 Pa. Superior Ct. 49, and W. J. & S. R. Co. v.

Whiting Lumber Co., 71 Pa. Superior Ct. 161, he exercised such acts of dominion over the subject of the shipment as to amount, in the eye of the law, to an acceptance; and in P. R. R. Co. v. Whitney & Kemmerer, 73 Pa. Superior Ct. 588, we held the consignor liable for freight and demurrage when the consignee refused the shipment. The Descalzi case only seems to be an exception; for a close reading of the report shows that the consignee at first receipted for the car of melons and only subsequently refused to accept the melons, so that as to the railroad company, there was a technical receipt by him; and the report fails to show whether under the contract the melons were sold "free on board cars" or were loaded by the shipper as agent for the consignee. The Descalzi case may, also, be distinguished from this one, in that there the defendant ordered a shipment of melons which had not been set apart for him but were to be selected by the shipper from a stock of melons; while here the defendant bought certain specific articles which were set aside for it and the contract could only be fulfilled by the shipment of those very goods.

The I beams loaded on the car by the seller, pursuant to the contract in this case, were not the beams bought by defendant; it was not the owner of and had no jus disponendi over the beams transported over plaintiff's road; they were never received or accepted by defendant nor any acts of dominion exercised over them by it. It follows that no contract for the payment of the freight and demurrage charges can be implied against the defendant and the carrier is confined to its lien on the goods and its right of action against the consignor.

The assignment of error is sustained. The judgment is reversed and is now entered for the defendant.