Pa. Railroad *v.* Rothstein & Sons, Appellants.

Argued November 23, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADT-FELD and PARKER, JJ.

*Edmund W. Kirby,* of *Morris & Kirby,* for appellants.

*Theodore Voorhees,* of *Barnes, Biddle & Myers,* for appellee, cited: New York Central R. R. Co. v. York & Whitney Co., 256 U. S. 406 and Delaware R. R. v. Andrews Co., 90 Pa. Superior Ct. 574.

OPINION BY CUNNINGHAM, J., April 28, 1933:

This action was brought by the plaintiff carrier to recover freight charges for the transportation of two shipments of produce—one a carload of lettuce, and the other a carload of grapes. Defendants filed an affidavit of defense and also set up a counterclaim for the value of the grapes. The court below held the affidavit of defense was insufficient, and also sustained plaintiff's demurrer to the counterclaim; this appeal is by the defendants from the judgment entered for the full amount demanded. As the defense pleaded against the claim upon the second shipment differs from that interposed against the demand upon the first, each will be considered separately.

(1) The carload of lettuce was loaded on June 7, 1928, at Kent, Washington, and was consigned by Sawdy & Hunt to themselves at Omaha, Nebraska. On June 9, 1928, the car was diverted to W. N. McLaren,

at Chicago; and on June 16, 1928, was reconsigned by Fry Brokerage Co., as agent, to J. E. Corcoran at Pittsburgh, who reconsigned it in turn to the defendants, produce merchants in Philadelphia. On June 27th defendants reconsigned the car to Burton & Briel, Inc., Richmond, Va. On June 22nd defendants had delivered to plaintiff's freight agent in Philadelphia the following letter:

"Dear Sir:

This is to serve notice on you that we are agents only and have no beneficial title in the property contained in the car.

Yours truly,

F                                      H. Rothstein & Son."

Defendants also averred that prior to the reconsignment of the car from Chicago to Pittsburgh, the Fry Brokerage Company gave plaintiff written notice that it was acting as agent and that the beneficial owner of the shipment was one Carl W. Joslyn, of Cedaredge, Colorado.

The car reached Richmond on June 29, 1928, where it was refused by the ultimate consignees, and notice of this action was given to defendants.

The defense to the claim for freight charges on this shipment was that plaintiff had notice that defendants were acting only as agents in the matter, and were therefore not liable for the charges.

The parties agree that the legislation involved is what is known as the "Newton Amendment" to the Transportation Act of 1920. It amended Section 3, paragraph 2, of the Transportation Act (41 Stat. 479; 49 U. S. C. A. 3 (2)). Section 3, paragraph 2, originally read as follows:

"(2) *Payment of freight as prerequisite to delivery.* No carrier by railroad subject to the provisions of this chapter shall deliver or relinquish possession at destination of any freight transported by it until all

tariff rates and charges thereon have been paid, except under such rules and regulations as the commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination: Provided, that the provisions of this paragraph shall not be construed to prohibit any carrier from extending credit in connection with rates and charges on freight transported for the United States, for any department, bureau, or agency thereof, or for any state or territory or political subdivision thereof, or for the District of Columbia.''

The amendment, approved March 4, 1927 (44 Stat. 1447; 49 U. S. C. A. 3 (2)), added the following provisions:

''Where carriers by railroad are instructed by a shipper or consignor to deliver property transported by such carriers to a consignee other than the shipper or consignor, such consignee shall not be legally liable for transportation charges in respect of the transportation of such property (beyond those billed against him at the time of delivery for which he is otherwise liable) which may be found to be due after the property has been delivered to him, if the consignee (a) is an agent only and has no beneficial title in the property, and (b) prior to delivery of the property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of the property. In such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable for such additional charges, irrespective of any provisions to the contrary in the bill of lading or in the contract

under which the shipment was made. An action for the enforcement of such liability may be begun within the period provided in paragraph (3) of section 16 of this title or before the expiration of six months after final judgment against the carrier in an action against the consignee begun within the period provided in paragraph (3) of section 16. If the consignee has given to the carrier erroneous information as to who the beneficial owner is, such consignee shall himself be liable for such additional charges, notwithstanding the foregoing provisions of this paragraph. An action for the enforcement of such liability may be begun within the period provided in paragraph (3) of section 16 or before the expiration of six months after final judgment against the carrier in an action against the beneficial owner named by the consignee begun within the period provided in paragraph (3) of section 16.''

The court below held that the above quoted notice was insufficient to relieve defendants from liability, because, in the case of a shipment which was reconsigned, a consignee who desires to take advantage of the provisions of the amendment must notify the delivering carrier in writing of the name and address of the beneficial owner of the property, as well as of the fact that he himself is merely an agent.

If the amendment in question applies at all to the present situation, we are of opinion the court below was correct in holding that the notice given was insufficient to relieve defendants of the freight charges. Since the shipment in this case was clearly reconsigned to a point other than that specified in the original bill of lading, defendants were required to state not only that they were agents, but were also obliged to give the name of the real owner. Concededly, the written notice of June 22, 1928, did not comply with this requirement. Nor would the notice from the Fry Brokerage Company, even if valid in

other respects, satisfy the act, since the consignee itself is required to state who the beneficial owner is, and such requirement must be strictly complied with: St. Louis etc. Rwy. Co. v. Starbird, 243 U. S. 592.

We are of opinion, however, that the act has no application to the freight charges demanded of these defendants, and that the decision of the issues here involved should not be put on the ground taken by the court below. Apparently, the amendment has not yet received judicial construction, but a careful analysis of its terms leaves its purpose in no doubt. As has been noted, it qualifies Section 3, paragraph 2. The section is headed, "Payment of freight as prerequisite to delivery." Following its enactment, it became the duty of the carrier, as a matter of law, to collect all charges from the ultimate consignee, who was required to pay not only the charges billed to him at the time of delivery, but also any other charges which were found, after delivery, to have been required by the tariffs, but which through some mistake had not been billed. The charges here involved are not of that character. The harshness of the rule was exemplified in the case of N. Y. Central etc. R. R. Co. v. York and Whitney Co., 256 U. S. 406. In that case the defendants were the consignees of a shipment which they handled only as commission merchants. They accepted the freight, paid the charges demanded by the carrier, sold the bill of lading, and remitted the net proceeds to the consignor. Subsequently it developed that the carrier had collected less than the lawful amount of the charges, and suit was brought to recover such balance. It was held that defendants were liable for the under-charges, even though the carrier knew they were commission merchants and had agreed not to collect such charges.

A reading of the amendment makes it clear that it was passed to give relief to agents and brokers in such

a situation, but we think it is equally clear that it has no application to one who does not accept delivery of the goods, and who is not, therefore, "otherwise liable" for under-charges. "Where carriers by railroad are instructed by a shipper or consignor to *deliver* property transported by such carriers to a consignee other than the shipper or consignor," *such consignee* is legally relieved against payment of charges "beyond those billed against him at the time of *delivery*," and which are found to be due after the property has been *delivered* to him, provided he gives the specified notice. This notice is required to be given prior to *delivery* of the property. If the prescribed notice is given, the further provisions of the amendment make the shipper or beneficial owner liable for *such additional charges*, while if the consignee erroneously designates the beneficial owner, the consignee himself is liable for *such additional charges,* notwithstanding the notice.

The amendment, therefore, deals only with the liability of a consignee, who takes delivery, for charges not billed to him at the time of delivery. It does not purport to cover the liability of a consignee who reconsigns goods, since, by the very definition of the term, "reconsignment" is a change in destination pursuant to instructions given before delivery of the goods. The court below apparently came to the conclusion that the amendment applied also to the liability of a reconsignor because of the presence therein of the words "in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading." These words, however, do not refer to the liability of a reconsignor, but to the fact of a reconsignment of the shipment. The liability defined is still that of the consignee who actually takes delivery. The consignment in such case may be of two kinds. It may be a consignment direct to the original consignee. Under such circumstances, if the con-

signee simply gives notice that he is an agent, the carrier may collect the charges from the shipper or consignor, who is under a primary liability. On the other hand, where there has been a series of reconsignments or diversions, the original shipper or consignor may well have no further interest in the goods, and therefore should not be held for the charges. In the latter situation, consequently, Congress has put the added burden upon the consignee who takes delivery of notifying the carrier of the name of the beneficial owner. When the reason for the distinction is given proper consideration, the ambiguity which the court below found in the words referring to reconsignment disappears.

Apart from the amendment, defendants have pleaded nothing which would relieve them from liability. By their written order of June 27, 1928, they directed plaintiff to deliver this carload to Burton & Briel, in Richmond, Va. Under our decisions, this was such an exercise of dominion over it as rendered them liable for the tariff charges: W. J. & Seashore R. R. Co. v. Whiting Lumber Co., 71 Pa. Superior Ct. 161, 164; P. & R. Rwy. Co. v. International Motor Co., 84 Pa. Superior Ct. 582, 587; P. & R. Rwy. Co. v. Taylor et al., 102 Pa. Superior Ct. 31. The notice of June 22, 1928, stating that defendants were agents only, is of no effect to vary their liability under the order of reconsignment, and the notice from the Fry Brokerage Company is equally ineffective. In the reconsignment order they purported to act as principals in exercising dominion over the shipment, and they should be bound by their action in so doing. A similar situation arose in Delaware, Lackawanna & Western R. R. Co. v. Andrews Bros. Co., 90 Pa. Superior Ct. 574. In that case the defendant also directed the carrier to reconsign the freight. In an action for the freight charges, the defendant pleaded that the railroad was orally

notified that defendant was acting as agent for the Peppers Fruit Company, and also that the Peppers Fruit Company had notified the railroad by letter that the defendant was their authorized representative. It was held that these allegations were insufficient to relieve from liability for the charges. In the course of the opinion, this court said:

"Neither the letter of the Peppers Fruit Company written to the Pennsylvania Railroad Company in 1921, nor the fact that appellant's business is that of a commission broker or agent, is inconsistent with appellant's becoming the owner of a car shipped by the Peppers Fruit Company; neither would prevent the appellant from dealing with a carrier as principal if it chose to do so, and so far as this record discloses, that is exactly what appellant did by its written order. The delivery of that order was, for all that appears properly pleaded in the affidavit of defense and amendments, such exercise of ownership or of the right to dispose of the car as to impose on appellant liability for the transportation charges: R. R. Co. v. Whiting Lumber Co., 71 Pa. Superior Ct. 161; R. R. Co. v. Warren Ross Co., 234 N. Y. 261."

Even had the reconsignment order been coupled with the notice of agency, this would also have been ineffective to prevent judgment. It is an elemental principle of agency that to relieve himself from liability, an agent in dealing with a third party must not only disclose the fact of the agency, but also the name of his principal: Horan v. Hughes, 129 Fed. 248, affirmed 129 Fed. 1005; Sloan Corp. v. Linton, 260 Pa. 569, 572; 2 C. J. 816, 817. We see no reason why this principle should not be applied to the present situation. In a shipment of this sort, which involved a series of reconsignments, plaintiff had no way of ascertaining defendants' principal, and in fact no such allegation is made in the affidavit of defense. The

notice given by Fry Brokerage Company prior to the shipment of the car to Pittsburgh would not be adequate notice of the owner of the shipment at the time defendants made the reconsignment, since it would be possible for the title to change hands several times in the interim.

The conclusion of the court below that the affidavit of defense was insufficient to prevent judgment as to this shipment was correct, but not for the reasons stated in its opinion.

(2) The second shipment involved a carload of grapes shipped from California on July 24, 1928, to Kansas City. On July 25th it was reconsigned by the Kansas City consignee to defendants in Philadelphia, where it arrived on August 2nd. On August 11th defendants reconsigned the car to themselves at Richmond, with a notice to plaintiff to advise Burton & Briel of the shipment. On the same day a washout occurred on plaintiff's lines into Richmond, which delayed the shipment for three days at Potomac Yards, Virginia. The car arrived in Richmond on August 16, 1928, where it was refused by Burton & Briel. Plaintiff sold the contents of the car and credited the proceeds of the sale against the freight charges. Defendants deny liability for the charges because of the delay, and further set up a counterclaim amounting to $312, being the amount which they allege Burton & Briel had agreed to pay for the grapes. The following excerpt from the opinion of the court below is conclusive as to this defense:

"Prior to the consignment to Richmond, the car of grapes was en route or standing in freight yards from July 24, 1928, to August 11, 1928, a period of nineteen days. This would seem to remove this particular shipment from the classification of perishable freight and relieve plaintiff of any duty to handle the shipment with more expedition than in the case of

ordinary freight. The rule quoted by defendants from 10 C. J. 287, note 20, states that reasonable time in cases of a shipment of perishable goods or goods peculiarly liable to injury from delay, is a shorter period than in other cases, owing to the special circumstances known to the parties at the time the undertaking was entered into. In the opinion of the court, the fact that the shipment was Thompson grapes, loaded and shipped nineteen days before, did not put plaintiff on notice that delay would be particularly injurious to the shipment. Delay might have been harmful to the agreement of sale between defendants and the purchaser at Richmond which, as events developed, was the fact, but the terms of that agreement were not known to the plaintiff. Under the circumstances, the delay of three days duration was not unreasonable. The delay was due to a washout over which plaintiff had no control, and plaintiff was justified in holding the car at Potomac Yards, Va., rather than sending it over another route, particularly in view of the fact that there is no averment that there was another route into Richmond which was available for that purpose. As the defendants have pleaded it, their objections are based on the fact that the delay lost them the benefits of their sale of the grapes, and not upon any deterioration of the grapes themselves. As there is no averment that the plaintiff had any knowledge of the necessity for quicker handling than was given the shipment, and as the plaintiff cannot be charged with such knowledge from the circumstances that surrounded the shipment, it follows that defendants' defense to plaintiff's claim on the car of grapes is insufficient, and their set-off or counterclaim does not set forth a valid cause of action. The averment of unreasonable delay in the latter, is not supported by the facts disclosed by the other pleadings.

See Catanzaro & Sons v. Southern Pac. R. R., 90 Pa. Superior Ct. 578.''

It may also be pointed out that the proper measure of damages for delay in shipment is the difference between the value of the goods at the place and time when the shipment should have been delivered, and the value when actually delivered: Jakway v. Lehigh Valley R. R. Co., 98 Pa. Superior Ct. 300, 304. These figures are not set out in the affidavit of defense. There is nothing to show that defendants could not have sold the shipment on the day it arrived in Richmond for the same amount that their customer had agreed to pay for it. Hence the demurrer might also have been sustained on this ground.

In our opinion, the court below did not err in entering a summary judgment for the total amount of the charges on each shipment.

Judgment affirmed.