Reading Company, Appellant, *v.* Sobelman.

Argued October 15, 1940. 

 Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ. 

*W. Wilson White*, with him *T. R. White*, for appellant.

*Howard H. Yocum*, of *Biddle, Paul, Dawson & Yocum*, for appellee.

OPINION BY CUNNINGHAM, J., April 16, 1941:

This is an action by a common carrier to recover an inadvertent undercharge in interstate freight rates resulting from an improper classification of two carloads of iron boiler tubes as scrap iron.

On December 6, 1935, the Empire Iron and Metal Company of Granville, N. Y. shipped two carloads of boiler tubes to Philadelphia, Pa. The initial carrier, Delaware and Hudson Railroad, issued uniform order bills of lading covering the shipments under which the tubes were consigned to the order of the shipper, "Notify B. H. Sobelman"; they also bore a notation— "For export." In some manner (not disclosed by the record nor of any importance here) the shipments were classified as "scrap iron," but before being unloaded by the delivering carrier, Reading Company, plaintiff below and appellant herein, were reclassified as "boiler tubes," thereby entitling the delivering carrier to demand and collect higher rates than those fixed for the transportation of scrap iron. If the contents of the cars had been scrap iron the rate would have been $192.92, but for boiler tubes it was $237.20.

Sobelman, the notify party, did not question his liability to the delivering carrier upon a classification as scrap iron and accordingly paid it the $192.92 above mentioned. He refused, however, to pay the additional sum of $44.28, prescribed for boiler tubes. The basis of his refusal was not that the reclassification was unwarranted, but upon the sole ground that he had no beneficial interest in the merchandise and was merely acting as agent for a steamship line hereinafter mentioned.

Reading Company, thereupon, brought suit against Sobelman before a magistrate to recover the $44.28 in dispute; from the judgment entered against him he appealed to the municipal court where the case was tried before BLUETT, J., and a jury, largely upon stipu-

lations by counsel, supplemented by proof of uncontroverted facts.

The testimony raised no issues of fact for submission to the jury; each side presented a point for binding instructions; the trial judge instructed the jury to return a verdict for the defendant and subsequently denied plaintiff's motions for judgment in its favor, n. o. v., or a new trial. The present appeal is by the plaintiff from the judgment on the verdict.

Our examination of the record has convinced us the carrier's point for binding instructions should have been affirmed or its motion for judgment notwithstanding the verdict granted.

These material and uncontradicted facts are shown by the record. Upon the arrival of the cars at the Noble Street Freight Station of the plaintiff in Philadelphia on December 16, 1935, its agent called Mr. Krones of defendant's office on the telephone and was told to deliver the shipments to the S. S. Blair Devon at Pier 98, South. The cars were accordingly forwarded to Pier 98, where they were unloaded by Philadelphia Piers, Inc., acting as agents for plaintiff. Defendant's agent, J. J. Berkery, signed receipts for both shipments. The bills of lading, endorsed in blank by the shipper, were also surrendered by defendant to the carrier. In the second of two arrival notices sent out by plaintiff railroad, defendant was designated as follows: "Isbrandtsen Moller Line, B. H. Sobelman, Agents."

As the shipments were interstate, the rights of the parties are governed by the Interstate Commerce Act (49 U. S. C. A. 1 et seq.) and its amendments, in so far as this legislation may be applicable (*New York, N. H. & H. R. Co. v. California Fruit G. Exchg.*, 125 Conn. 241, 5 A. 2d 353) and otherwise by common law principles (*Pennsylvania R. R. Co. v. Lord and Spencer*, 295 Mass. 179, 3 N. E. 2d 231, 105 A. L. R. 1211).

The principles applicable to the liability for freight charges of the person named in a bill of lading as the

notify party, who surrenders the bill of lading and pays the original charges demanded, were summarized by KELLER, J., (now President Judge) in *Davis v. Richardson,* 87 Pa. Superior Ct. 205, 207, 208, as follows: "[The carrier's] right to recover depends on whether defendant accepted delivery of the shipment *or exercised such dominion over it as was equivalent thereto.* For, in such event, the notify party, in possession of an order bill of lading and paying the freight charges demanded, becomes to all intents and purposes the consignee of the shipment: *Southern Ry. Co. v. Collins,* 119 S. E. 833 (S. C.); *Brown v. A. C. L. R. Co.,* 74 S. E. 754 (S. C.), within the rule laid down in *P. C. C. & St. L. Ry. Co., v. Fink,* 250 U. S. 577, and liable for the difference between the freight charges erroneously paid by him and the lawful amount due under the applicable published rates: *N. Y. Cent. R. Co., v. Sampson,* 110 N. E. 964 (N. Y.); *South. Ry. Co. v. Collins,* supra: and this is so notwithstanding the consignee was only a commission agent and had remitted the net proceeds to his principal, the shipper; *N. Y. Cent. R. Co. v. York & Whitney Co.,* 250 U. S. 406. See also *P. & R. Ry. Co. v. Internationl Motor Co.,* 84 Pa. Superior Ct. 582; *P. & R. Ry. Co. v. Baer,* 56 Pa. Superior Ct. 307; *Penna. R. Co. v. Titus,* 109 N. E. 857 (N. Y.); *Cornelius v. C. of Ga. R. Co.,* 69 South. 331 (Ala.)." (Italics supplied.) In that case we held, however, that defendant's affidavit prevented the entry of a summary judgment against him because it was not clear that he had exercised such dominion and control over the shipment *as to amount to an acceptance* and bring him within the rule quoted.

A consignee's liability for freight charges rests entirely upon contract, express or implied; he is equally liable whether the goods are actually accepted by him, or some act of dominion is exercised over them by him from which a contract to pay the charges may be implied; *Phila. & Reading Ry. Co. v. International Motor Co.,* 84 Pa. Superior Ct. 582, and cases cited pages 587,

588. The decisions of the United States Supreme Court are to the same effect: *Pittsburgh etc. Ry. Co. v. Fink,* 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151; *N. Y. Cent. R. R. v. York & Whitney Co.,* 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016; *Louisville & Nashville Railroad Company v. Central Iron & Coal Company,* 265 U. S. 59, 44 S. Ct. 441, 68 L. Ed. 900.

In our opinion, the facts of record show this defendant exercised dominion over the shipments in question to an extent sufficient to make him liable, as a matter of law, for the freight charges here sought to be collected. It is not disputed that he, as the notify party named in the bills of lading, surrendered them to the carrier and paid the freight charges under the classification as scrap iron. In addition, when the cars arrived at the general destination specified in the bills of lading, "Philadelphia, Pa.," defendant assumed control over their contents to the extent of ordering plaintiff to deliver the cars at a particular place in Philadelphia, namely, alongside S. S. Blair Devon at Pier 98, South. Finally, defendant's authorized agent receipted for the shipments when they were delivered by the plaintiff railroad at the pier. We think these acts amounted to the "exercise of such dominion over [the shipments] as was equivalent" to an acceptance of delivery.

A written order to make a local track delivery, by a party who had previously surrendered the bill of lading and directed the carrier to forward to a certain city, agreeing to pay all freight charges, was held the equivalent of an acceptance of delivery in *P. & R. Ry. Co., v. Taylor,* 102 Pa. Superior Ct. 31, 156 A. 587. Speaking of the order to make a local track delivery, Judge LINN (now Mr. Justice LINN) stated (page 36) : "Under the decisions of this State, that was an acceptance of the shipment; it was such exercise of dominion over it as, alone, would render defendant liable to pay the tariff charges in suit: *W. J. etc. R. R. v. Whiting Co.,* 71 Pa. Superior Ct. 161, 163; *P. & R. Rwy. Co. v. International*

*M. Co.,* 84 Pa. Superior Ct. 582, 587." We see no reason why the order to make local delivery to Pier 98 should not be given the same effect in the case at bar.

The same principle—the exercise of dominion over the shipment—was the basis of our ruling that a diversion or reconsignment order obligates the person giving it to payment of freight charges: *Penna. R. R. v. Rothstein & Sons,* 109 Pa. Superior Ct. 96, 104, 165 A. 752; *Penna. R. R. v. Rothstein et al.,* 116 Pa. Superior Ct. 156, 176 A. 861; *Penna. R. R. Co. v. Rubin,* 130 Pa. Superior Ct. 578, 198 A. 521. As we stated in *Penna. R. R. v. Rothstein et al.,* [116 Pa. Superior Ct. 156] supra, at page 161: "In order to crystallize the rulings of our earlier cases, we now state the definite rule that a diversion or reconsignment order obligates the one signing it for the payment of freight charges, unless he states, in the order itself, not only the fact that he is acting as agent for another, but also the name of his principal."

It is not essential to the disposition of the present case to consider whether the charges here involved are such "additional charges" as are referred to in the Newton Amendment of 1927 to the Transportation Act of 1920, (44 Stat. 1447; 49 U. S. C. A. 3 (2) ), considered at length in *Penna. R. R. v. Rothstein & Sons,* [109 Pa. Superior Ct. 96, 100] supra. There is no suggestion that defendant ever gave plaintiff notice in writing of "agency and absence of beneficial title." Nor does the record show the carrier had knowledge that defendant was acting solely as agent in the transaction and had no beneficial title in the shipments.

The designation of defendant as "agent" in the above mentioned arrival notice sent him after he had ordered local delivery of the shipments to Pier 98 is not sufficient to support an inference that the carrier knew defendant was not the beneficial owner but was acting solely as agent. These arrival notices were made up in six copies; two were sent to defendant, one in his capacity

of notify party and the other as agent for the steamship line. Admittedly, defendant was known to the carrier as an agent generally for steamship companies, including Isbrandtsen Moller Line. This fact, however, was not inconsistent with ownership in the goods by defendant or his dealing with the carrier as principal in the transaction here in question. Compare *D. L. & W. R. R. v. Andrews Bros. Co.,* 90 Pa. Superior Ct. 574; *Pa. R. R. v. Rothstein & Sons,* [109 Pa. Superior Ct. 96, 105] supra; *Penna. R. R. v. Rothstein et al.,* [116 Pa. Superior Ct. 156, 160, 161] supra. Moreover, as stated in the first Rothstein case, at page 105: "It is an elemental principle of agency that to relieve himself from liability, an agent, in dealing with a third party, must not only disclose the fact of the agency, but also the name of his principal."

The fact the bills of lading contained notations the shipments were "for export" does not exclude beneficial ownership in defendant, nor have any material bearing on whether he exercised such dominion and control over them as would make him liable for the interstate freight charges in question. The notation showed merely that the ultimate destination of the shipments was some foreign country; it did not indicate who owned or controlled them during the course of the interstate transportation with which we are concerned.

The first, third and fourth assignments are sustained.

Judgment reversed and here entered in favor of appellant.