# Baltimore and Ohio Railroad Company, Appellant, v. Feldbaum.

Argued March 17, 1954. Before Rhodes, P. J., Hirt, Ross, Gunther, Wright, Woodside and Ervin, JJ.

*John A. Shrader,* with him *Guckes, Shrader & Burtt,* for appellant.

*Ned Stein,* for appellees.

OPINION BY WOODSIDE, J., August 30, 1954:

This is an appeal from the refusal of the Municipal Court of Philadelphia to remove a compulsory non-suit entered during the trial of plaintiff's action in assumpsit to collect freight charges on a carload of grapes.

It is admitted by the complaint and answer that this shipment originated in California and terminated at Philadelphia, and that in the course of this shipment the carload was consigned to defendants at Philadelphia by Economy Produce Company of Cleveland, Ohio. It is also admitted by the pleadings that the proper freight charges for this shipment from California to Philadelphia, under tariffs filed with the Interstate Commerce Commission were $865.90. The main issue arises from plaintiff's averment and defendants' denial that on the aforementioned date, plaintiff delivered the carload in question to defendants, that defendants accepted it from plaintiff, and that defendants exercised control over it.

At the trial before Judge BONNIWELL the delivery receipt prepared by the plaintiff's delivery clerk was introduced into evidence. It showed that the car was "broken" at 8:15 A.M., November 11, 1949. There was testimony that it was initialed by Max Feldbaum, one of the defendants, when the car was broken and some of the goods taken out. This receipt was properly admitted into evidence. See Uniform Business Records as Evidence Act of May 4, 1939, P. L. 42, §2, 28 PS §91b.

Plaintiff's produce terminal agent testified that he observed the car in question on the day after it was opened and noticed that approximately 200 boxes (of the 910 shipped in the car) had been removed; that November 12th defendant Max Feldbaum, in the witness' presence, put 200 boxes back into the car from a truck driven by a local trucker, not employed by the railroad; that after the 200 boxes were put back the car was shipped to Economy Produce Company, Cleveland, Ohio, at Mr. Feldbaum's request and on Mr. Feldbaum's assurance that Economy Produce Company in Cleveland would pay all charges, both inbound to Philadelphia and outbound to Cleveland; that he told Mr. Feldbaum at that time he would remain liable for all charges. The telegrams introduced by defendant show he was permitted to refill the car "with any variety." Whether the car was refilled with the same grapes taken from it does not appear.

At the close of testimony on behalf of plaintiff, counsel for defendants offered into evidence a series of six telegrams between Max Feldbaum, Economy Produce of Cleveland, and their broker, A. N. Altmayer. These telegrams, transmitted over the course of November 11 and November 12, 1949, indicate that after defendants had broken the doorway and removed a substantial portion of the goods they complained to their broker Altmayer that the grapes delivered were not the variety ordered from Economy; that the following day it was arranged between defendants, Altmayer, and Economy Produce Company that defendants should make the car solid again and ship it back to Economy Produce Company on local rate, and that defendants did refill the car with 200 boxes of grapes before it was shipped from Philadelphia to Cleveland.

At the close of plaintiff's testimony the court granted defendants' motion for a non-suit which it

subsequently refused to remove. We think the court erred.

Although the shipper who calls upon a public carrier to transport goods to a consignee designated by him is primarily liable for the lawful charges resulting from the transportation, *Pa. R. R. Co. v. Whitney & Kemmerer,* 73 Pa. Superior Ct. 588, 593 (1920), nevertheless a consignee may also become liable if he takes possession of the goods, or has ordered the shipment or assumed to control it. The right of the carrier to collect freight charges from the consignee is based on an implied contract, and from the consignee's receipt and acceptance of the freight such a contract will ordinarily be implied. *Phila. & Reading Ry. Co. v. International Motor Co.,* 84 Pa. Superior Ct. 582, 587 (1925).

Whether demand is made upon consignee for payment at the time of delivery or not is immaterial. *N. Y. C. & H. R. R. Co. v. York & Whitney Co.,* 256 U. S. 406, 41 S. Ct. 509, 65 L. Ed. 1016 (1920). The obligation to pay the legal sum due arises under an inflexible rule of law and is not released by equitable considerations. *The Pa. R. R. Co. v. DeMarto,* 90 Pa. Superior Ct. 216 (1926).

The consignee is liable whether the goods are actually accepted by him or some act of dominion is exercised over them by him from which a contract to pay the charges may be implied. *Reading Co. v. Sobelman,* 144 Pa. Superior Ct. 270, 19 A. 2d 754 (1941). The mere diversion or reconsignment by a consignee of a shipment amounts to exercising dominion over the shipment and makes one so diverting the shipment liable to the carrier for the transportation charges. *Pa. R. R. Co. v. Rubin et al.,* 130 Pa. Superior Ct. 578, 198 A. 521 (1938); *Pa. R. R. Co. v. Rothstein & Sons,* 109 Pa. Superior Ct. 96, 165 A. 752 (1933); *Phila. &*

*Reading Ry. Co. v. Taylor et al.,* 102 Pa. Superior Ct. 31, 156 A. 587 (1930). The mere signing of the diversion order obligates the one signing it for the payment of freight charges unless he states, in the order itself, not only the fact that he is acting as agent for another, but also the name of his principal. *Pa. R. R. Co. v. Rothstein et al.,* 116 Pa. Superior Ct. 156, 176 A. 861 (1935).

The question here is whether there was sufficient evidence presented to the jury to support a finding that the consignees accepted the shipment from the carrier or exercised some act of dominion over it so that they would be liable for the freight charges.

The evidence establishes that a railway delivery receipt was signed by one of the defendants, and that the car was opened and about one fourth of its contents unloaded. The goods taken from the car by the defendant were removed from railroad property by them and kept in their possession until the following day.

As far as the railroad was concerned this was exercising an act of dominion over the shipment and an acceptance of it by the defendants.

That the defendants subsequently returned the grapes to the seller does not nullify his acceptance of the shipment from the carrier.

The cases cited by the appellee on this question are not in point. They are cases brought, not by the carrier for freight charges, but by the shipper for the purchase price of the goods. They hold that where the goods are not what was ordered the purchaser may reject lumber after it is unloaded and placed in a shed, *Gobey v. Wallace,* 48 Pa. Superior Ct. 61 (1911); or coal after it is in the cellar, *Slattery v. Carroll,* 70 Pa. Superior Ct. 578 (1919); or packaged goods after storage when it is customary to store them without

breaking the package until sold in the usual course of trade, *Crunden Martin Mfg. Co. v. Turner*, 274 Pa. 425, 118 A. 365 (1922).

But a consignee cannot remove the goods from the carrier's property and exercise such control over them as was done in the above cases without being liable to the carrier for the freight charges. Where a consignee ordered a carload of chestnut lumber and while the car was in transit diverted it to another party who, upon opening the car, discovered the lumber was red oak instead of chestnut and rejected it, the consignee was held to be liable for the freight charges because he had exercised dominion over the car by reconsigning it. *West Jersey & Seashore R. R. Co. v. Whiting Lumber Co.*, 71 Pa. Superior Ct. 161 (1919).

In *Pennsylvania Railroad Company v. Descalzi*, 59 Pa. Superior Ct. 614 (1915) the carrier was permitted to recover the freight charges from the consignee even though he had rejected the shipment because the watermelons consigned to him were not of the size he had ordered. This case was decided on the theory that title to the melons passed to the consignee upon delivery to the carrier by the seller and being thus the property of the defendant he was liable to the carrier for freight even though he had rejected them.

The signing of the receipt and the removal of a substantial amount of the goods from the car and from the railroad property was sufficient for the jury to find that the defendants had accepted the shipment and that liability was thereby imposed upon them. The court should not have taken the case from the jury.

Judgment reversed with a procedendo.